

**ORDER**

Cause No.01-12-00704-CV; *In re Tammy Fountain*

Original Proceeding on Petition for Writ of Habeas Corpus

Pursuant to a request by real party in interest Kathy Katcher, relator Tammy Fountain was found in contempt by the trial court. Relator was ordered to serve 60 days in jail. Relator challenged the validity of that order by filing this original habeas corpus proceeding. This court ordered relator discharged upon filing of a bond, pending the outcome of this original proceeding.

A majority of this panel denied habeas corpus relief. The contempt order is still in place. However, because the parties informed this court that the real party in interest no longer seeks enforcement of the trial court's orders finding relator in contempt and committing her to a 60-day jail sentence (originally entered at her request), this court has refrained from the ultimate order implied by our denial of habeas corpus relief (or from an agreed dismissal of the habeas corpus proceeding): remanding relator to the custody of the sheriff pursuant to the trial court's commitment order that is still in place, and consequently ordering release of the bond.

On November 21, 2013, relator filed a motion for en banc reconsideration. As described by relator: "The primary issue is whether this Court should issue an order that fully effects th[e] parties' Rule 6.6 agreement by releasing the bond." The bond is the condition upon which relator has delayed serving the jail sentence imposed for being found in contempt. Yet, despite our court's disposition of the merits of the habeas corpus petition, finding no legal justification to invalidate the contempt finding or the commitment order, relator asks us to release the bond without also returning her to the custody of the sheriff, based solely on the acquiescence of the real party in interest. While this is a compelling reason why the trial court should consider vacating the challenged orders, it is no basis for this court to substitute its judgment for the trial court's.

1

Nearly a year has passed in which the parties could have asked the trial court to vacate the orders at issue, and despite our requests, no evidence has been presented to this court that any such request has ever been made. Consequently there is no record whatsoever in this court of any activity in the trial court relevant to the issues now raised in relator's motion. Accordingly, to facilitate the court's consideration of the motion for en banc reconsideration, relator is ordered to supplement its motion with the following:

- A certified or sworn copy of every document that is material to the implementation of paragraph 14 of the parties' December 12, 2012 Agreement (i.e., "The current enforcement shall be dismissed with prejudice.") that was filed in the underlying proceeding;

- A certified or sworn copy of every document that is material to the implementation of paragraph 7 of the parties' September 27, 2013 Rule 6.6 Agreement (i.e., "Katcher agrees not to seek enforcement of the trial court's contempt order of May 24, 2012, or the revocation order of July 31, 2012.") that was filed in the underlying proceeding;

- A certified or sworn copy of every document relating to any request to the trial court that it vacate or otherwise suspend its May 24, 2012 contempt order or July 31, 2012 revocation order in light of the parties' aforementioned agreements and the pending original habeas corpus proceeding in this court that was filed in the underlying proceeding; and

- Any transcript of any proceeding in the trial court relating to any of the foregoing subjects.

**Relator is ordered to file the supplemental materials no later than January 6, 2014**, including any responsive documents which may be filed after the entry of this order. After the time that the supplemental materials are filed, relator is **further ordered** to continuously supplement its motion with any future filings in the trial court within the scope described above, to be filed in this court within three business days of such documents being filed in the trial court. Relator also may supplement her motion for en banc reconsideration to include reference to any materials filed in this court as a result of this order. Any such supplemental briefing must be filed no later than January 6, 2014.

2

Real party in interest Kathy Katcher is ordered to file a response to the motion for en banc reconsideration. **The response is due no later than February 3, 2014.** Katcher's response must include a full description of what steps, if any, have been taken in the trial court to effectuate the Rule 6.6 agreement the parties filed in this court. In particular, Katcher must inform this court whether she has requested that the trial court withdraw the contempt and commitment orders in light of her agreement not to seek enforcement of the orders and acquiescence to the relief sought by relator.

The clerk of this court is ordered to immediately deliver to the trial court:

- This court's majority opinion denying habeas corpus relief, along with the dissenting opinion, dated December 28, 2012;
- Relator's motions for rehearing dated January 2 and 4, 2013;
- Real party in interest's response to the motions for rehearing dated January 15, 2013;
- This court's abatement order dated January 29, 2013;
- Real party in interest's status report dated July 1, 2013;
- This court's July 2, 2013 order;
- Real party in interest's status report dated August 9, 2013;
- Relator's status report dated August 9, 2013;
- This court's September 24, 2013 order;
- Real party in interest's motion to enforce Parties' Rule 6.6 Agreement dated September 27, 2013;
- This court's October 15, 2013 order;
- Relator's letter to the clerk of the court dated October 17, 2013;
- This court's order dated November 7, 2013, along with the memorandum dissent from such order;
- Relator's motion for en banc reconsideration dated November 21, 2013; and
- A copy of this order.

**Finally, in the interests of judicial efficiency, the parties are ordered to immediately inform this court of any action taken by the trial court relevant to the remaining controversy in this court**, including but not limited to any action taken to vacate or otherwise suspend the effect of the commitment order, or any

indication the trial court may give that it is disinclined to do so despite the real party in interest's abandonment of her enforcement efforts and acquiescence to relator's requests for relief from the order.

It is so ORDERED.


Judge's signature: /s/ Michael Massengale
                         Acting for the court

Panel consists of Justices Keyes, Massengale, and Brown

Justice Keyes, dissenting, except with respect to the request for a response to the motion for en banc reconsideration.

Date: December 10, 2013

4

**Opinion issued December 28, 2012**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00704-CV

————————————

## IN RE TAMMY FOUNTAIN, Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## O P I N I O N

In this habeas corpus proceeding, relator Tammy Fountain challenges the legality of her confinement for violating an agreed order in a suit affecting the parent-child relationship.[*] Fountain stipulated that she violated the order, which resulted in findings of contempt and an order committing her to a 60-day jail

---

[*] The underlying case is *In the interest of S.F., a child*, No. 2010-31997 in the 309th District Court of Harris County, Texas, the Honorable Sheri Dean, presiding.

sentence. The commitment order was suspended, conditioned upon Fountain's continuing compliance with court orders. Acting on a motion to revoke the suspension of commitment, the trial court subsequently found that Fountain had committed further violations of the court's orders, and it ordered that she be taken into custody in accordance with the prior contempt order.

Finding no abuse of discretion in the trial court's revocation of its prior suspension of commitment, we deny the petition.

**Background**

This is the second time Fountain has sought relief in this court from the proceedings in a suit affecting her parental relationship with her adopted son. *See In re Fountain*, No. 01-11-00198-CV, 2011 WL 1755550 (Tex. App.—Houston [1st Dist.] May 2, 2011, orig. proceeding) (opinion on rehearing). After we denied mandamus relief from the denial of a motion to dismiss the underlying suit, Fountain agreed to the entry of an order which appointed her as sole managing conservator and Kathy Katcher as a nonparent possessory conservator. Among other things, the October 18, 2011 agreed order provided that within 30 days each party was to "permit the other conservator to obtain health-care information regarding the child" and authorize the disclosure of "protected health information to the other conservator." This order also required each party to notify the "other party, the court, and the state case registry" of any change in the party's contact

2

information, including current residence, phone number, and employer contact information.  Fountain and Katcher were also required to provide notification of any intended change in this residency and contact information "on or before the 60th day before the intended change."  If a party did not know of the change in time to provide the 60-day notice, then notice was required "on or before the fifth day after the date that the party knows of the change."

Several months after the entry of the October 18 agreed order, Katcher moved to enforce that order for Fountain's failure to comply.  The trial court held two hearings on May 3 and May 11, 2012.  The parties stipulated, and the court found, that Fountain violated the October 18 order by failing to execute releases and thereby failing to permit Katcher to obtain health-care information regarding the child, as required by the agreed order.  In an order dated May 24, 2012, Fountain was found to be in contempt and ordered to be committed to the Harris County Jail for a period of 60 days as punishment.  In the same order, the 60-day jail sentence was suspended on the condition that she comply with the October 18 agreed order and with additional provisions contained in a new modification order which, like the contempt order, was also dated May 24, 2012.

The May 24 modification order required, among other provisions, that Fountain notify the child's schools in writing that Katcher could have lunch with the child at school, attend school activities, and "receive all school notices,

3

including all email notices normally sent to parents." Fountain was required to provide this notice to the child's current school by May 15, a date which was four days after the May 11 hearing but nine days before the May 24 order giving rise to this new obligation was actually entered. Additionally, the modification order obligated both parties to exchange a variety of information through an internet application called "Our Family Wizard." The parties were also required to promptly update this data, within 36 hours of any change to any of the initially exchanged data or to other specified scheduling matters, including but not limited to the inability to exercise a period of possession or knowledge that the child would not be attending a previously scheduled extracurricular activity.

Approximately one month later, Katcher moved to revoke the suspension of Fountain's commitment. Katcher alleged multiple violations of the prior orders, three of which are relevant in this proceeding. First, she alleged that Fountain had failed to give her sufficient notice of changes to the child's residence when Fountain notified her of a change of residence to Galveston County effective three days later. Second, she alleged that Fountain had not timely notified the child's school that Katcher could visit the child for lunch, pick him up from class, and attend school activities. Third, she argued that Fountain had violated the provision of the modification order requiring communication within 36 hours through Our Family Wizard about changes to the scheduled possessory period with the child.

4

After a hearing, the trial court revoked the suspension of Fountain's commitment in an order dated July 31, 2012. The court found that Fountain had violated the prior orders three times. First, she had failed to "provide the required notice" that she was moving on June 22 when she mailed notice of the move to Katcher on "June 18, 2012." Second, Fountain had failed to inform the school by May 15 that Katcher had permission to access the child there. Third, Fountain had failed to post information to Our Family Wizard as required. The district court ordered that Fountain be committed in accordance with "the orders attached hereto as Exhibits A, B, and C." A copy of the May 24 commitment order was attached as Exhibit A. On its second page, that order provided that "punishment for the violation set out above is assessed at confinement in the Harris County Jail for a period of sixty (60) days." Fountain was taken into the custody of the jail on the same day.

Fountain filed an original petition for writ of habeas corpus seeking relief in this court, raising five issues. We ordered her released on bond pending our determination of her petition. *See* TEX. R. APP. P. 52.10.

## Analysis

A final order for possession of or access to a child may be enforced by means of a motion for enforcement as provided by chapter 157 of the Family Code. TEX. FAM. CODE § 157.001(a) (West 2008). Such an order may be enforced by

contempt, as also provided by chapter 157. *Id.* § 157.001(b). Chapter 157 specifies particular information that a motion for enforcement must provide "in ordinary and concise language," including identification of "the provision of the order allegedly violated and sought to be enforced," "the manner of the respondent's alleged noncompliance," and "the relief requested by the movant." *Id.* § 157.002(a). A motion to enforce the terms and conditions of access to a child must also include "the date, place, and, if applicable, the time of each occasion of the respondent's failure to comply with the order." *Id.* § 157.002(c). Chapter 157 sets forth detailed procedures for hearings on enforcement motions.[1]

One potential outcome of a hearing on an enforcement motion requesting contempt findings and sanctions is that the trial court "may place the respondent on community supervision and suspend commitment if the court finds that the respondent is in contempt of court for failure or refusal to obey an order rendered as provided in this title." *Id.* § 157.165. Community supervision under

---

[1] *See* TEX. FAM. CODE ANN. §§ 157.061–.168. For example, upon the filing of a motion for enforcement requesting contempt, the trial court shall set the date, time, and place of the hearing and order the respondent to personally appear and respond to the motion. *Id.* § 157.061(a). The respondent is entitled to receive personal service of a copy of the motion and notice not later than the 10th day before the date of the hearing. *Id.* § 157.062(c). If a respondent who has been personally served with notice nevertheless fails to appear at a hearing, the court may not hold the respondent in contempt but may, on proper proof, grant a default judgment for the relief sought and issue a capias for the arrest of the respondent. *Id.* § 157.066.

chapter 157 is subject to different procedures from those applicable to enforcement motions. The procedures governing community supervision are detailed in a distinct subchapter. Under that subchapter, a "party affected by the order may file a verified motion alleging specifically that certain conduct of the respondent constitutes a violation of the terms and conditions of community supervision." *Id*. § 157.214. Unlike the procedures generally applicable to a motion to enforce, a prima facie showing of a violation of a condition of community supervision can result in the immediate arrest of the respondent, *id*. § 157.215, followed by a hearing on the motion to revoke community supervision within three days.[2] "After the hearing, the court may continue, modify, or revoke the community supervision." *Id*. § 157.216(c).

In her petition, Fountain alleges numerous deficiencies and errors in the motion and order that revoked the suspension of her commitment to jail. A commitment order is subject to collateral attack in a habeas corpus proceeding. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *see* TEX. GOV'T CODE ANN.

---

[2] *Compare id*. § 157.216(a) ("The court shall hold a hearing [on motion to revoke community supervision] without a jury not later than the third working day after the date the respondent is arrested under Section 157.215.") *with id*. § 157.062(c) ("Notice of hearing on a motion for enforcement of an existing order providing for . . . possession of or access to a child shall be given to the respondent by personal service of a copy of the motion and notice not later than the 10th day before the date of the hearing.").

§ 22.221(d) (West 2004) (granting the appellate courts the power to issue writs of habeas corpus). The purpose of the habeas corpus proceeding is not to determine the guilt or innocence of the relator, but only to determine whether she has been unlawfully restrained. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). We initially presume that the contempt order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). But the writ will issue if the trial court's contempt order is beyond the court's power or the court did not afford the relator due process of law. *Id.* (citing *Henry*, 154 S.W.3d at 596).

The relator bears the burden of showing that she is entitled to relief. *Id.* In reviewing the record, we do not weigh the proof; rather, we determine only if the judgment is void because, for example, the relator has been confined without a proper hearing or with no evidence of contempt to support her confinement. *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995); *see* TEX. GOV'T CODE ANN. § 22.221(d) (providing that courts of appeals exercise jurisdiction over habeas corpus petitions "[c]oncurrently with the supreme court").

## I.  Punishment

In her first issue, Fountain argues that the July 31 revocation order was void because it did not clearly state the punishment imposed. She notes that the order, including its three attachments, is 37 pages long, but that the text of the order itself does not specify the length of the jail sentence or identify which attachment

8

contains the sentence. Fountain does acknowledge, however, that the May 24 contempt order was attached to the July 31 revocation order and specified a 60-day jail sentence.

Fountain relies upon Family Code section 157.166(a)(4) for the proposition that "an enforcement order must include 'the relief granted by the court.'" This provision is contained within subchapter D of chapter 157 relating generally to enforcement hearings and orders in suits affecting the parent-child relationship. *See* TEX. FAM. CODE § 157.001(a) ("A motion for enforcement as provided in this chapter may be filed to enforce a final order for conservatorship, child support, possession of or access to a child, or other provisions of a final order."). Section 157.166 does specify certain contents which must be included in an enforcement order, including "the relief granted by the court." *See id.* § 157.166(a)(4). But the provision is not part of subchapter E, which relates specifically to community supervision, including proceedings to revoke community supervision. *See id.* §§ 157.211–.217.

Although Fountain's legal challenges are directed at the July 31 revocation order, the actual enforcement order at issue in this proceeding is the May 24 contempt order. Fountain does not complain that this order failed to identify "the relief granted by the court"—indeed, she concedes that it did. Her complaint, instead, is that the relief was not expressly stated in the July 31 revocation order,

9

and that referencing the May 24 contempt order and attaching it to the July 31 revocation order was the equivalent of not including it at all. As characterized by Fountain, "[h]iding this requirement [of a statement of 'the relief granted by the court'] is the equivalent of not including it."

We disagree with the suggestion that the statement of the relief granted by the court was "hidden" in any relevant sense. Fountain relies on *In re Levingston*, 996 S.W.2d 936, 938 (Tex. App.—Houston [14th Dist.] 1999, no pet.), and *Ex parte Waldrep*, 783 S.W.2d 332, 333 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding), for the proposition that "the purpose of the commitment order is to notify the offender of how she has violated its provisions, to notify the sheriff so that he can carry out enforcement, and to provide sufficient information for an adequate review." We do not question this principle. *See, e.g.*, *In re Luebe*, No. 01-09-00908-CV, 2010 WL 1546961 (Tex. App.—Houston [1st Dist.] Apr. 2, 2010, no pet.); *Turner*, 177 S.W.3d at 289. However, Fountain provides no argument about how she lacked adequate notice of the sentence, what information is missing for law enforcement purposes, or how our review has been impaired. To the contrary, the record is clear that Fountain was sentenced to a 60-day jail sentence in the May 24 contempt order, that the sentence was suspended on the condition of her future compliance with the court's orders, and that on July 31 the

trial court found that such orders had been violated and accordingly revoked the suspension of the previously entered 60-day sentence.

The May 24 contempt order provided on its second page that "punishment for the violation set out above is assessed at confinement in the Harris County Jail for a period of sixty (60) days." This clearly stated the punishment imposed, contrary to Fountain's assertion that it was hidden. "There is no particular form required of either the order of contempt or the commitment order, provided that their essential elements appear in a written document." *Ex parte Snow*, 677 S.W.2d 147, 149 (Tex. App.—Houston [1st Dist.] 1984, no writ). We overrule Fountain's first issue.

## II. Grounds for revocation of suspension

In her four remaining issues, Fountain argues that Katcher's motion for revocation and the trial court's July 31 revocation order fail to satisfy the procedural standards of Family Code chapter 157 in several respects. In her second issue, she argues that the judgment of contempt cannot be enforced based on violations of the May 24 modification order because the conditions of suspension in the May 24 contempt order mistakenly reference the "Modification Order of May 25, 2012." In her third issue, she argues that although Katcher's motion to revoke alleged that she violated the October 18 agreed order by mailing a notice on June 19, 2012, the trial court found that the violation was committed on

11

June 18, 2012, and therefore is "not supported by the pleadings." The fourth issue relates to the requirement in the May 24 contempt order that certain information be provided by May 15—before that order was actually entered. And the fifth issue complains of the specificity of the motion to revoke and the revocation order with respect to the allegation and finding that Fountain interfered with Katcher's participation in school lunches by failing to timely share information about the child's schedule on Our Family Wizard in violation of the court's orders.

One misconception underlies each of these issues in common. Fountain wrongly assumes that Katcher's motion to revoke and the trial court's revocation order must satisfy all of the procedural safeguards for an enforcement motion under subchapter D of chapter 157, as if a separate allegation, finding, and sentence for contempt of court were at issue. In other cases, these safeguards in fact have been applied under circumstances when a party has been found in contempt and sentenced, the commitment has been suspended subject to compliance with specified conditions, and then in further proceedings to revoke the suspension of commitment, a trial court made additional findings of contempt and imposed a different punishment. In such circumstances, with new allegations of contempt and enhanced sanctions, the motion to revoke does not merely invoke a previously rendered judgment of contempt, but the new motion instead functions as a separate enforcement motion for purposes of chapter 157. *See, e.g.*, *In re*

12

*Broussard*, 112 S.W.3d 827, 831 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Ex parte Bagwell*, 754 S.W.2d 490, 493 (Tex. App.—Houston [14th Dist.] 1988, no writ); *Ex parte Durham*, 708 S.W.2d 536, 537 (Tex. App.—Dallas 1986, no writ).

In this case, however, although Katcher alleged and the trial court found that Fountain had violated the conditions of the suspension of her commitment, Katcher did not request and the trial court did not enter additional findings of contempt. Instead, as anticipated by chapter 157 and particularly subchapter E pertaining to community supervision, the trial court merely enforced the provisions of its own suspended commitment order, and it revoked the suspension, resulting in the imposition of the original sentence imposed for the original, admitted episodes of contempt.

Fountain provides no argument or authority for us to apply subchapter D of chapter 157 and its detailed procedures applicable to an original enforcement hearing to the separate circumstance of a proceeding merely to determine whether to revoke the suspension of a valid prior order of commitment for contempt, and we decline to do so. That approach would render ineffective the common practice of suspending contempt judgments contingent upon future compliance with court order. There is no reason to deprive trial courts of such flexibility in the enforcement of their orders. A heightened procedural standard is justified for

contempt proceedings in the first instance, especially when incarceration of the respondent is a potential result. But once there has been a judgment of contempt, there is no requirement that the same heightened measure of process be provided in order to adjudicate an allegation that the conditions of a suspended judgment have been violated. Instead, like the analogous circumstance of an appeal from the revocation of probation in a criminal proceeding, we review the trial court's ruling for an abuse of discretion. *See, e.g.*, *Bryant v. State*, No. PD-0049-12, 2012 WL 5232147 (Tex. Crim. App. Oct. 24, 2012); *see also In re Butler*, 45 S.W.3d 268, 272 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("Proceedings in contempt cases should conform as nearly as practicable to those in criminal cases."). In the case of an order revoking community supervision, proof of any one violation of the conditions of suspension is sufficient to support the revocation order. *See In re Bourg*, No. 01-07-00623-CV, 2007 WL 2446844 (Tex. App.—Houston [1st Dist.] Aug. 27, 2007, no pet.) (holding proof of any one violation of an order revoking suspension of commitment for contempt is sufficient to support revocation); *In re B.C.C.*, 187 S.W.3d 721, 724 (Tex. App.—Tyler 2006, no pet.).

Accordingly, we must deny relief if the revocation was justified on any basis, and in this case it was. After Fountain received notice of Katcher's motion to revoke and a hearing was held, the trial court found three violations of Fountain's conditions of suspension of commitment. One of the violations related

14

to Fountain's failure to comply with the trial court's order with respect to timely informing Katcher of a planned change of residential address. The October 18 agreed order provided, in relevant part:

*Required Notices*

> EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS . . . . THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT PARTY KNOWS OF THE CHANGE.

> THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

> FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

15

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. . . .

In the July 31 revocation order, the trial court specifically found that Fountain had violated this provision by failing to provide Katcher the "required notice" of her plan to move to Galveston County. This finding was supported by circumstantial evidence presented at the evidentiary hearing on the motion to revoke. On June 18, 2012, Fountain sent a letter to Katcher, informing her of a change of residential address. Fountain would have violated the agreed order's "Required Notices" provision if she knew of "an intended change" of residential address before June 13, or more than five days before she actually provided notice of the move to Katcher.

Fountain testified that she knew a move was possible as of June 14, but she did not know until June 16 that the move would actually occur. Other evidence at the hearing cast serious doubts on that testimony. The child spent the weekend of June 15–17 with Katcher. During that weekend, the child told Katcher that he had a "condo in Galveston" with his own bathroom, that it had a pool where he had been swimming, and that he been to his new school. Fountain admitted that the child had learned all of this information prior to June 15. Additionally, on June 16 Fountain leased her Houston home to an acquaintance. Nevertheless, Fountain insisted that she did not know about the intended move until June 16.

16

The burden of proof to justify the revocation of a suspension of commitment is a preponderance of the evidence, meaning that greater weight of the credible evidence which would create a reasonable belief that the respondent violated a condition of the suspension of commitment. *Cf. Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006) (describing burden of proof to revoke probation). We review the evidence in the light most favorable to the trial court's judgment. *See Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "The trial court is the exclusive judge of the credibility of the witnesses and must determine whether the allegations in the motion to revoke are sufficiently demonstrated." *Id.*

As the exclusive judge of the credibility of the witnesses, the trial court obviously did not believe Fountain's testimony that she did not know of an intended change of residential address prior to June 14. The circumstantial evidence relating to the move, including the child's knowledge of details about the new residence and the arrangement of a tenant to lease Fountain's Houston home, supported a reasonable belief that Fountain violated the agreed order's requirement that she notify Katcher on or before the fifth day after she knew of the intended change.

Fountain also contends that Katcher's motion to revoke failed to provide her sufficient notification of this alleged violation due to a variance in the date of her

17

written notice as specified in the motion (June 19) and the date identified in the revocation order (June 18). This defect does not invalidate the revocation order. "It is well settled that allegations in a revocation motion need not be made with the same particularity of an indictment although such allegations must be specific enough to give the accused notice of alleged violation of law contrary to conditions of probation." *Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977) (quoted with approval in *In re Zandi*, 270 S.W.3d 76, 77 (Tex. 2008) (per curiam)). The motion to revoke adequately notified Fountain of the essential allegations against her, relating to the timing of her written notice of the move to Galveston. Her letter was dated June 16 but was actually mailed on June 18. The motion to revoke's reference to the notice being mailed on June 19 did not deprive Fountain of notice of the essential allegation about her violation of the requirement of written notice.

Accordingly, we overrule Fountain's third issue challenging the adequacy of the motion to revoke to provide her notice of the allegation that she violated the agreed order by providing untimely notice of an intended move. Because at least one of the grounds for revocation was supported by the evidence, we need not address Fountain's remaining issues challenging the other two violations found by the trial court.

18

## Conclusion

We conclude that Fountain has not shown that she was illegally restrained by the trial court's order revoking suspension of commitment and committing her to county jail. We therefore deny Fountain's request for habeas corpus relief.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

19



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00704-CV

———————————

## IN RE TAMMY FOUNTAIN, Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## DISSENTING OPINION

I respectfully dissent. I deeply disagree with the majority's characterization of the issues in this case, its legal conclusions, and its disposition of this habeas corpus proceeding.

The trial court found Tammy Fountain in contempt for violating a court order in a suit affecting the parent-child relationship, sentenced her to jail, and, in

the same order, suspended her commitment.[1]  The court subsequently revoked its earlier suspension order and committed Fountain to jail.  In five issues, she contends that the commitment order is void and violates her constitutional due process rights.  The majority first addresses the trial court's order committing Fountain to jail and reaches its conclusion that she be returned to jail.  It fails to identify or address any of the five issues raised by Fountain until page eight of its opinion, swiftly disposes of the first issue, and then lumps her other four issues together and disposes of those by holding that the statutory and constitutional procedural safeguards that apply to contempt proceedings do not apply to orders revoking the suspension of commitment.

I agree with Fountain that the commitment order is void under established Texas law and that, therefore, her commitment to jail violates her constitutional right to due process of law.  In its contempt order committing Fountain to jail, the trial court failed to specify the manner in which Fountain had committed two of the three violations for which it found her in contempt.  For the remaining violation, the trial court found Fountain in contempt for acts that occurred before the court signed the order giving rise to Fountain's obligation.  The commitment order is, therefore, void.  I would hold that the trial court abused its discretion in revoking

---

[1]  The underlying case is *In the interest of S.F., a child*, No. 2010-31997, in the 309th District Court of Harris County, Texas, the Honorable Sheri Y. Dean, presiding.

2

its order suspending Fountain's commitment. I would grant the petition for writ of habeas corpus, and I would order Fountain discharged.

## Background

On October 18, 2011, the trial court signed an order in which Tammy Fountain and Katherine Katcher agreed to their various rights and duties as conservators of a child. Among its numerous provisions, this order provided that, within thirty days after the signing of the order, each party was to "permit the other conservator to obtain health-care information regarding the child" and to authorize the disclosure of "protected health information to the other conservator" pursuant to federal health care law. The order also required each party to notify the "other party, the court, and the state case registry of any change in the party's current residence," phone number, employer contact information, and other similar information. The party was required to provide notification of any intended change in this residency and contact information "on or before the 60th day before the intended change." If the party did not know of the intended change in enough time to provide the sixty-day notice, then the party was required to give notice "on or before the fifth day after the date that the party knows of the change."

Several months later, on May 24, 2012, the trial court entered an order of contempt against Fountain because the court found that she had violated the earlier October 18, 2011 order by failing to execute the required releases to allow Katcher

3

to obtain the child's health-care information.  Accordingly, the trial court ordered Fountain committed to Harris County Jail for sixty days.  But in the same order, the court suspended Fountain's commitment so long as she complied "with each and every provision of the Agreed Order of October 18, 2011, and of the Modification Order of May 25, 2012."  To accompany this order, the trial court prepared a modification order, which imposed new duties and obligations on Fountain.  The hearing on these orders was held on May 11, 2012, but the orders were not signed and filed until May 24, 2012, thirteen days later.

The May 24, 2012 modification order, among other provisions, required that Fountain notify the child's school, in writing with notice to the court, that Katcher could have lunch with the child at school, pick the child up from school, attend school activities, and receive all school notices.  Fountain was required to notify the child's current school by May 15, 2012, four days after the hearing on the new order, but nine days before the trial court signed the new order giving rise to this obligation.  Additionally, the May 24, 2012 modification order obligated both parties to exchange contact information and schooling information and, within thirty-six hours of a change, to post any changes to periods for possession of the child through an Internet program called "Our Family Wizard."

A month later, Katcher moved to revoke the suspension of Fountain's commitment.  She accused Fountain of four violations of the prior orders.  First,

4

she alleged that Fountain had failed to provide the required notice of changes to the child's residence when Fountain had notified her only on June 19, 2012, that Fountain and the child would be moving to Galveston County three days later. Second, she alleged that Fountain had not notified the child's school by May 15, 2012, that Katcher could visit the child for lunch, pick him up from class, attend school activities, and receive school notices. Third, Katcher alleged that Fountain had violated the provision of the May 24, 2012 modification order requiring communication within thirty-six hours through the Our Family Wizard website about changes to the scheduled possessory period with the child. Fountain had allegedly told Katcher that the child would not be available for Katcher's scheduled lunch visit on June 6, 2012, because the child would be absent from school all week, but she then told Katcher on June 8, 2012, that the child had only been absent on the day scheduled for Katcher's visit. Fourth, Katcher accused Fountain of not paying a $77 court cost.

On July 31, 2012, after a hearing, the trial court revoked the suspension of Fountain's commitment ("the commitment order"). Using substantially the same wording as found in Katcher's motion to revoke, the court found that Fountain had violated its prior orders three times. First, she failed to "provide the required notice" that she was moving on June 22, 2012, when she mailed notice of the move to Katcher on June 18, 2012. Second, Fountain failed to inform the child's current

5

school by May 15, 2012, that Katcher had permission to access the child there. Third, Fountain failed to post information to Our Family Wizard as required when she had told Katcher that the child was unavailable for lunch with Katcher on June 6, 2012. The district court ordered that Fountain be committed in accordance with "the orders attached hereto as Exhibits A, B, and C." A copy of the original May 24, 2012 contempt order hand-labeled with an "A" followed the revocation order. On its second page, the attached contempt order provided that "punishment for the violation set out above is assessed at confinement in the Harris County Jail for a period of sixty (60) days."

Fountain filed an original petition for writ of habeas corpus seeking relief in this Court, raising five issues. We ordered her released on bond pending our determination of her request for relief.

### Contempt and Commitment Orders

"Criminal contempt is punishment for past disobedience to a court order that constitutes an affront to the dignity and authority of the court." *In re Houston*, 92 S.W.3d 870, 876 n.2 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). Civil contempt is remedial and coercive; release may be procured by compliance with the provisions of the court's order. *Id.* "Civil contempt proceedings are quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings." *Id.* at 876. Among the due process rights accorded is

6

the right to reasonable notice of each allegedly contumacious act. *Id.* Due process requires "full and complete notification" of the charges with a reasonable opportunity to meet them by defense or explanation. *Id.* In addition, criminal contempt requires proof beyond a reasonable doubt. *Id.*; *see Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). In order to support a judgment of contempt, the underlying decree must set forth the terms of compliance in "clear, specific and unambiguous terms" so that the person charged with obeying the order will know exactly what duties and obligations are imposed on her. *Chambers*, 898 S.W.2d at 260; *Houston*, 92 S.W.3d at 877. The order of contempt may not be susceptible to more than one interpretation. *Houston*, 92 S.W.3d at 877.

"Due process requires a court, before imprisoning a person for violating an earlier order, to sign a written judgment or order of contempt and a written commitment order." *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex. 1997) (per curiam) (citing *Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex. 1980)). The contempt order must clearly state in what respect the court's earlier order has been violated. *Id.*; *see also Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969) (order or other means of notification "must state when, how, and by what means the defendant has been guilty of the alleged contempt"). Complementing this due process requirement, the Texas Family Code mandates that motions for enforcement and orders confining someone for violating a court's enforcement

7

order must state "the manner of the respondent's noncompliance." Tex. Fam. Code Ann. §§ 157.002(a)(2), 157.166(a)(3) (Vernon 2008). Further, an order imposing incarceration for criminal contempt must contain findings identifying "the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt."[2] *Id.* § 157.166(b).

### Standard of Review of Commitment Order

A commitment order is subject to collateral attack in a habeas corpus proceeding. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (per curiam); *see* Tex.

---

[2]   Family Code section 157.166 provides:

> (a)   An enforcement order must include:
>    (1)   in ordinary and concise language the provisions of the order for which enforcement was requested;
>
>    (2)   the acts or omissions that are the subject of the order;
>
>    (3)   the manner of the respondent's noncompliance; and
>
>    (4)   the relief granted by the court.
>
> (b)   If the order imposes incarceration or a fine for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt.
>
> (c)   If the enforcement order imposes incarceration for civil contempt, the order must state the specific conditions on which the respondent may be released from confinement.

Tex. Fam. Code Ann. § 157.166 (Vernon 2008).

8

GOV'T CODE ANN. § 22.221(d) (granting appellate courts power to issue writs of habeas corpus). The purpose of the habeas corpus proceeding is not to determine the guilt or innocence of the relator; rather, the purpose is only to determine whether she has been unlawfully restrained. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). We presume that the contempt order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). But we will issue the writ if the trial court's contempt order is void because it is beyond the court's power or the court did not afford the relator due process of law. *Id.* (citing *Henry*, 154 S.W.3d at 596).

The relator bears the burden of showing that she is entitled to relief. *Id.* In reviewing the record, we do not weigh the proof; rather, we determine only if the contempt order is void because, for example, the relator has been confined without a proper hearing or with no evidence of contempt to support her confinement. *Chambers*, 898 S.W.2d at 259–60.

### Validity of Commitment Order

Here, the trial court's order committed Fountain to jail as punishment for past violations of the court's May 24, 2012 contempt order. Therefore, the commitment order is an order of criminal contempt. *See Houston*, 92 S.W.3d at 876 n.2.

9

In her petition, Fountain points out numerous deficiencies and errors in the revocation motion and order that committed her to jail for contempt. She argues that two of the contempt violations are improper because the commitment order does not state the manner in which she failed to comply with the prior court orders, as required by due process and the Texas Family Code. *See* TEX. FAM. CODE ANN. § 157.166(a)(3); *Shaklee*, 939 S.W.2d at 145 ("The contempt order must clearly state in what respect the court's earlier order has been violated.") (citation omitted). Fountain argues that the remaining contempt violation is improper because the trial court found that she violated a provision in the court's order that required compliance before the court even signed the order imposing that particular obligation. *See Chambers*, 898 S.W.2d at 262 (contemnor cannot be held in contempt of court for actions that predate when court's order is reduced to writing).

Because I find these arguments dispositive in determining that the commitment order is void, I would not reach Fountain's other issues.

### I.    *Deficiencies in the Revocation Motion and Order*

While the commitment order states that Fountain failed to comply with several provisions of prior court orders, the order does not state the *manner* of her noncompliance. The order states:

> **Violation 1**. On June 18, 2012, respondent mailed to movant a notice that as of June 22, 2012, her residence and that of the child was

10

changed to an address in Galveston County. This does not provide the required notice.

This violation was accompanied by a copy of the text of the October 18, 2011 agreed order that required the parties to inform each other of changes to the child's current address within sixty days or within five days of learning of a change of address if the party did not know of the change in enough time to meet the sixty-day requirement. For the other violation, the order states:

> **Violation 4**. Respondent has interfered with movant's lunches with the child at school by violation of the order concerning posting information on Our Family Wizard. Movant had scheduled lunch with the child at school for June 6, 2012; respondent notified movant that the child would not be at school all that week. Respondent changed this schedule, and notified movant — at lunch time on June 8, 2012 — that in fact he **had been** at school all that week, except for the Wednesday movant had scheduled. Respondent failed to post this change timely, presumably to prevent movant's being able to reschedule and have lunch with the child a different day of the week.

This language is quoted verbatim from Katcher's motion to revoke. Preceding the violation, the court's May 24, 2012 modification order is quoted, which required that each party promptly post:

> b. knowledge that a child will not be attending a previously scheduled extracurricular activity — immediately, or as soon as practicable under the circumstances; but no less than eight hours; . . .

> f. any other changes — within thirty-six hours of the change.

These findings do not state the manner of Fountain's noncompliance. In the first violation, stating that Fountain had failed to report that she was moving with

11

the child to Galveston County, the findings do not mention how Fountain failed to notify Katcher. Did the court find that Fountain had known when she was moving earlier, and so it found that she had failed to notify Katcher within the five-day time limit imposed by the October 18, 2011 order? Or did the court find that Fountain had known she was planning to move much earlier, and thus she failed to notify Katcher sixty days before the move as the October 18, 2011 order required?

In the other violation, noting that Fountain had failed to update the Our Family Wizard program on the week Katcher attempted to visit the child at lunch, the findings again fail to state *how* Fountain had violated the May 24, 2012 modification order. Did she violate the modification order when she reported to Katcher that the child would be gone from school all week but then two days later reported he had been in school some days that week? The earlier order did not require her never to change the child's itinerary, only to report changes to the Family Wizard program. So, did Fountain fail to update the program at all? Or did she fail to update the program within the thirty-six hour time limit? For both violations, on what date did Fountain fail to comply with the previous orders? *See id.* (requiring order to identify date of each violation found to constitute contempt). The face of the commitment order does not answer these questions.

The commitment order is insufficient because these findings of violations of prior orders are unclear. *See Houston*, 92 S.W.3d at 877. The contempt order

12

must spell out exactly what duties and obligations are imposed and what the contemnor can do to purge the contempt. *Id.* (citing *Ex parte Proctor*, 398 S.W.2d 917, 918 (Tex. 1966)). Generally, in the contempt context, the order or motion must be clear and unambiguous, which means the order or motion must be capable of only one reasonable interpretation. *Chambers*, 898 S.W.2d at 260. Although the revocation motion and the subsequent commitment order listed dates and described Fountain's actions, these documents are amenable to multiple reasonable interpretations as to how or even whether Fountain had violated the earlier orders. *See id.* ("A court order is insufficient to support a judgment of contempt only if its interpretation requires inferences or conclusions about which *reasonable* persons might differ.") (emphasis in original) (citing *Ex parte MacCallum*, 807 S.W.2d 729, 730 (Tex. 1991)). This is fatal to the commitment order because Fountain lacked the requisite notification of how to purge her contempt and how she might avoid violating court orders in the future. *See Shaklee*, 939 S.W.2d at 145 (invalidating contempt order for failing to specify when contemnor violated earlier orders); *Ex parte Blasingame*, 748 S.W.2d 444, 446–47 (Tex. 1988) (invalidating contempt order punishing couple for taking action that they reasonably interpreted as not violating prior orders).

The majority states that Fountain "wrongly assumes that Katcher's motion to revoke and the trial court's revocation order must satisfy all of the procedural

13

safeguards for an enforcement motion under [Family Code] chapter 157, as if a separate allegation, finding, and sentence for contempt of court were at issue." Slip Op. at 12. The majority then cites several cases for the proposition that a motion to revoke the suspension of commitment actually "functions as a separate enforcement motion," and is therefore subject to chapter 157's procedural requirements, including section 157.166's requirement that the contempt order specifically state the manner of the contemnor's noncompliance with a previous court order, when the trial court, in a revocation proceeding, makes additional contempt findings and imposes a different punishment. Slip Op. at 12–13. The majority concludes that these cases are distinguishable and that chapter 157's procedural requirements are inapplicable, because, here, when the trial court revoked the suspension of Fountain's commitment it "did not enter additional findings of contempt," but instead it imposed the "original sentence" for the "original, admitted episodes of contempt." Slip Op. at 13.

The majority justifies its holding by stating,

In other cases, these [procedural] safeguards in fact have been applied under circumstances when a party has been found in contempt and sentenced, the commitment has been suspended subject to compliance with specified conditions, and then in further proceedings to revoke the suspension of commitment a trial court made additional findings of contempt and imposed a different punishment. In such circumstances, with new allegations of contempt and enhanced sanctions, the motion to revoke does not merely invoke a previously rendered judgment of contempt, but the new motion instead functions as a separate enforcement motion for purposes of chapter 157.

14

Slip Op. at 12. The majority reasons that because Katcher "did not request and the trial court did not enter additional findings of contempt," but "merely enforced the provisions of its own suspended commitment order," "subchapter D of chapter 157 and its detailed procedures applicable to an original enforcement hearing" do not apply. Slip op. at 13. The majority cites no authority for its holding. Rather, it refuses to follow established authority on allegedly distinguishable factual grounds. I, therefore, take the majority to be making its own law without authority and in conflict with established law.

I disagree that the procedural safeguards applicable to enforcement motions and orders are not applicable here. And I disagree that there are material factual distinctions between this case and the prior cases in which the law has been established.

The original May 24, 2012 contempt order found Fountain in contempt for violating the provision of the October 18, 2011 agreed order requiring her to execute all necessary releases to permit Katcher to obtain health-care information concerning the child. The court ordered Fountain confined for sixty days in the Harris County Jail and ordered her to pay $5,000 to Katcher in attorney's fees, but the court then suspended the commitment pursuant to Fountain's compliance with the October 18, 2011 agreed order and the May 24, 2012 modification order. In the commitment order, which revoked the suspension of Fountain's commitment,

15

the court ordered that Fountain be confined for sixty days in the Harris County Jail, that Fountain pay $5,000 to Katcher, as ordered in the May 24, 2012 contempt order, and that Fountain pay, "in addition to the attorney's fees and costs assessed in the order suspending commitment signed on May 24, 2012," an additional $4,379 in attorney's fees and costs to Katcher's attorney.

The court also found that Fountain violated the October 18, 2011 agreed order by not "provid[ing] the required notice" that she and the child were moving to Galveston County and the May 24, 2012 modification order by failing to notify the child's school of Katcher's access and by failing to timely update Our Family Wizard. The commitment order thus identified additional violations of ongoing obligations without specifying how Fountain failed to comply with these obligations and imposed a greater punishment than the original contempt order. *See Houston*, 92 S.W.3d at 877 (contempt order must spell out duties and obligations imposed and what contemnor can do to purge contempt). Thus, the commitment order was not clear and unambiguous, as required for a holding of contempt. *See Chambers*, 898 S.W.2d at 260.

I would conclude that the commitment order is functionally equivalent to an original enforcement order, and, therefore, Family Code chapter 157's procedural safeguards, including section 157.166(a)'s requirement that the enforcement order state the manner of the contemnor's noncompliance, apply equally to this

16

proceeding. *See Ex parte Durham*, 708 S.W.2d 536, 537–38 (Tex. App.—Dallas 1986, orig. proceeding) ("The purpose of this commitment order is to enforce the punishment provisions imposed by the original order holding relator in contempt. Consequently, we hold that this commitment order is an 'enforcement order' under [the predecessor to section 157.166]."); *see also Houston*, 92 S.W.3d at 876 (holding that civil contempt proceedings are quasi-criminal, entitling contemnor to procedural due process "throughout the proceedings"). I would hold that procedural statutory and constitutional due process safeguards were violated in this case. *See* TEX. FAM. CODE ANN. § 157.166(a)(3); *Shaklee*, 939 S.W.2d at 145; *Houston*, 92 S.W.3d at 875–77. Therefore, the commitment order is void. *See Houston*, 92 S.W.3d at 875–77.

## II. Confinement for Violating Court's Command Before Court Issued Order Imposing Obligation

Even if the trial court had clearly stated the manner of Fountain's noncompliance in the commitment order, the order would still be void for finding Fountain in contempt of court for violating the court's May 24, 2012 order on a date predating the date on which the court actually signed that order. *See Chambers*, 898 S.W.2d at 262 ("A contemnor cannot be held in constructive contempt of court for actions taken prior to the time that the court's order is reduced to writing."). It is the written order, signed by the court, that evinces a party's rights and duties, not oral admonitions at the hearing. *In re Sellers*, 982

17

S.W.2d 85, 87 (Tex. App.—Houston [1st Dist.] 1998, orig. proceeding) (citing *Ex parte Price*, 741 S.W.2d 366, 367 (Tex. 1987)).

The second violation in the contempt order was for Fountain's failure to inform the child's school about Katcher's rights of access to the child by May 15, 2012. The underlying order giving rise to this obligation, however, was signed on May 24, 2012, nine days after the date on which Fountain allegedly violated the order. Under Texas law, this invalidates the commitment order. *See Chambers*, 898 S.W.2d at 262; *Sellers*, 982 S.W.2d at 87; *see also Dunn v. Street*, 938 S.W.2d 33, 35 n.3 (Tex. 1997) (per curiam) (voiding contempt judgment because contemnor "did not violate a written order of the trial court").

The trial court assessed a punishment of sixty days' confinement and required the payment of attorney's fees for all of the contumacious acts it found. This means that even if only one of the violation findings was invalid, the entire order would be void.[3] *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (per curiam) ("If one punishment is assessed for multiple acts of contempt, and one of those acts is not punishable by contempt, the entire judgment is void"); *Ex parte Sealy*, 870 S.W.2d 663, 667 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding) (holding same). The commitment of a person to jail on a void order violates constitutional due process. *See Gordon*, 584 S.W.2d at 688 ("Where the

---

[3] Because none of the three acts in the commitment order will support a finding of contempt, I would not reach Fountain's other issues.

judgment ordering confinement is 'void,' the confinement is illegal and the relator is entitled to discharge."); *In re Alexander*, 243 S.W.3d 822, 827 (Tex. App.—San Antonio 2007, orig. proceeding) ("A writ of habeas corpus will issue when the relator has not been afforded due process, or when the order requiring confinement is void.").

## Conclusion

I would hold that the trial court abused its discretion in revoking its order suspending Fountain's commitment to jail and that the commitment order is void. Accordingly, I would grant the petition for writ of habeas corpus, and I would order Fountain released from her bond and discharged.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

ACCEPTED
221EFJ017272239
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 January 15 P1:54
Christopher A. Prine
CLERK

01-12-0704-CV

_____

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/15/2013 1:54:28 PM
CHRISTOPHER A. PRINE
Clerk

IN THE FIRST COURT OF APPEALS
HOUSTON, TEXAS

_____

IN RE TAMMY FOUNTAIN,
*Relator*.

_____

Original Proceeding from the 309th Judicial District
Harris County, Texas

_____

REAL PARTY'S RESPONSE TO RELATOR'S
MOTION FOR REHEARING AND REQUEST FOR ABATEMENT

_____

Daryl L. Moore (14324720)
DARYL L. MOORE, P.C.
1005 Heights Boulevard
Houston, Texas 77008
713.529.0048 Telephone
713.529.2498 Facsimile
Daryl@heightslaw.com Email

Linda Marshall (13031700)
5020 Montrose, Suite 700
Houston, Texas 77006
713.651.1313 Telephone
713.654.9898 Facsimile

*Counsel for Real Party, Kathy Katcher*

**01-12-0704-CV**

_____

**REAL PARTY'S RESPONSE TO RELATOR'S
MOTION FOR REHEARING AND REQUEST FOR ABATEMENT**

_____

TO THE JUSTICES OF THE FIRST COURT OF APPEALS:

Real Party in Interest, Kathy Katcher, files this Response to Relator's Motion for Rehearing.

## I. INTRODUCTION

In a majority opinion issued on December 28, 2012, the Court denied Relator's request for habeas relief. On January 2, 2013, Relator filed a motion for rehearing.

In her motion, Relator asserts that the "parties agreed to the relief requested prior to this Court's opinions." MOTION FOR REHEARING at p. 2. As set forth below, the Court should abate this habeas proceeding so the parties can effectuate their agreement.

## II. RESPONSE

On December 12, 2012, trial counsel for the parties met and negotiated a preliminary settlement agreement of their underlying enforcement dispute.[1] Appendix A at p. 3, ¶ 13. The intent of the parties as reflected in the agreement was that they would perform under the agreement for a 6-month period — until June 2013 — at

---

[1] Appellate counsel learned of the preliminary agreement when Relator filed her motion for rehearing.

-1-

which time they would attend a status conference in the trial court to obtain a final order.

In the preliminary agreement, Real Party agreed that she would drop the enforcement proceeding. *Id.* at p. 3, ¶14. Real Party's expressed intent, however, was that the enforcement agreement would not be dismissed until June 2013, and that her duty to inform this Court of the preliminary agreement did not arise until after June 2013 — after a status conference and after the agreement became final. *See* Appendix B (email of Linda Marshall, "paragraph 14 doesn't take effect till June 2013."). Indeed, Relator conceded that "a reading of the Rule 11 Agreement may also support the position that such a duty to inform this Court of the agreement will not arise until after June 2013." SUPPLEMENT TO MOTION FOR REHEARING at p. 1.

### III. REQUEST TO ABATE

The parties have reached a preliminary agreement regarding the underlying enforcement proceeding that is the subject of this habeas proceeding. To permit the parties to effectuate their agreement, Real Party asks that the Court abate this proceeding until July 1, 2013. The abatement will permit the parties to perform under the agreement, and will allow the trial court to conduct a status conference in June 2013 and enter a final order if the parties have performed under the agreement. Then, if the agreement is performed, Real Party will dismiss the underlying enforcement

proceeding and — per paragraph 14 of the agreement — notify the Court that the habeas proceeding has been rendered moot.

## IV. PRAYER

Per the parties' preliminary agreement, this habeas proceeding will not become moot until after June 2013. Therefore, Real Party asks that the Court abate this proceeding until July 1, 2013.

Respectfully submitted,

/s/  Daryl L. Moore
Daryl L. Moore (14324720)
DARYL L. MOORE, P.C.
1005 Heights Boulevard
Houston, Texas 77008
713.529.0048 Telephone
713.529.2498 Facsimile
Daryl@heightslaw.com  Email

Linda Marshall (13031700)
5020 Montrose, Suite 700
Houston, Texas 77006
713.651.1313 Telephone
713.654.9898 Facsimile

*Counsel for Real Party, Kathy Katcher*

## CERTIFICATE OF SERVICE

On January 15, 2013, I sent a true and correct copy of the foregoing to the following:

Daniel J. Lemkuil
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
(*Counsel for Relator*, *Facsimile - 713.225.0099*)

/s/ Daryl L. Moore
Daryl L. Moore

**CERTIFICATE OF COMPLIANCE**

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this Real Party's Response to Relator's Motion for Rehearing and Request for Abatement (excluding any caption, signature, proof of service and certificate of compliance) is <u>454</u>.

This response complies with the typeface requirements of TRAP 9 because:

**WordPerfect X4 in 14-point Times New Roman.**


<u>/s/ Daryl L. Moore</u>
Daryl L. Moore



In The Interest of                    2010 31997          309th District
[REDACTED]                                                  Court
                                                       Harris County, TX

AGREEMENT

FILED
Chris Daniel
District Clerk
DEC 12 2012
Time _____
By _____

non-expanded

1. Ms. Katcher would have possession according to a Standard Possession Order starting Jan. 4, 2013 except: no

(1) Christmas, Spring Break, Thanksgiving (per SPO) will be switched odd/even years

(2) Ms. Katcher will have poss. for Father's Day weekend

(3) No mid-week (Thursday) possession

(4) ~~s~~ Extended summer possession to be exercised in 3 periods of possession separated by at least a week

(5) Ms. Fountain delivers the child to Ms. Katcher's ~~residence~~ and Ms. Katcher returns the child to Ms. Fountain's ~~residence~~ at the Barnes & Noble in Clear Lake

2. Restriction on S[REDACTED] S[REDACTED] being supervised is removed.

                    Ms. Katcher
3. Agree that ~~Kathy~~ shall be referred to by the child as his "God ~~parent~~ ~~mother~~"

(1)  4. Ms. Katcher's ~~family~~ shall be referred to as [REDACTED] family

5. Dr. Hunt shall be the child's sole mental health provider unless the parties agree in writing otherwise.

6. Dr. Hunt or any successor therapist shall not testify in any proceeding except as required by law.

7. Ms. Ketcher may consult with Dr. Hunt or any other mental health care provider for the child and meet with the therapists (and child) as requested by the therapist.

8. Parenting Coordinators Partnerships (Susan Marsh and Deborah Cisten) shall be appointed parenting coordinator. Each party shall pay 50%.

9. The parties will attend at least six sessions of divorce High Conflict therapy with a therapist selected by Mary Quinn.

10. Through 2017, any dispute involving the child shall be submitted to binding arbitration with Mary as amicus Quinn, including, but not limited to disputes over possession, compliance conservatorship

terms and conditions, communication, injunctions, parental behavior before any mod. is filed. If Mary Quinn is unable to resolve the issue serve as arbitrator, Then Court shall select the arbitrator. an arbitrator shall be recommend by Mary Quinn & failing agreement as to the arbitrator Any dispute shall be submitted to the parenting coordinator before it goes to arbitration. Arbitration shall not apply to enforcement actions or emergency motions for relief.

11. Judgment in Linda Marshall's favor against Ms. fountain of $13,000.00 Shall be entered to be paid $1,000.00 by January 15, 2013 and $300.00 a month on the 15th of each month thereafter.

12. All other orders, not modified hereby, remain in effect

13. This agreement is to temporary order with a status conference, except #'s 11, 12, 14, which will be in June 2013 part of a final order.

14. The current enforcement shall be dismissed with prejudice. Ms. Katcher shall inform the

(3) Court of Appeals she no longer opposes the pet. for habeas corpus

Signed 12/12/2012

_____          _____
Petitioner                          Respondent

_____          _____
Counsel for Petitioner              Counsel for Respondent

_____
Amicus

(4)

# B

**Daryl**

**From:** Linda Marshall [lgmlaw@airmail.net]
**Sent:** Monday, January 14, 2013 2:55 PM
**To:** Moore Daryl
**Subject:** Fwd: Katcher/Fountain

Sent from my iPhone

Begin forwarded message:

> **From:** Linda Marshall <lgmlaw@airmail.net>
> **Date:** December 30, 2012, 8:44:01 PM CST
> **To:** Greg Enos <greg@enoslaw.com>
> **Cc:** Mary Quinn <maryquinn@maryquinnlaw.com>, 000 Toni Herbes <Toni@enoslaw.com>
> **Subject: Re: Katcher/Fountain**
>
> If you will read the 12/12 agreement, you will see that paragraph 14 doesn't take effect till June 2013. I am willing to work with you on this but do not appreciate the implication that I am not complying .
>
> Where is a draft order? Perhaps when we have one to work with, we can deal with the habeas issue as well.
>
> Sent from my iPhone



## ORDER

Cause No    01-12-00704-CV; *In re Tammy Fountain*, Relator

Original Proceeding on Petition for Writ of Habeas Corpus from *Order Revoking Suspension and for Commitment to County Jail*, Cause No. 2010-31997, in the 309th District Court of Harris County, Texas.

Relator Tammy Fountain was found in contempt of the trial court's orders in an order dated May 24, 2012.   A 60-day jail sentence was suspended conditioned upon relator's future compliance with court orders.   The suspension of the sentence was revoked on July 31, 2012 and relator was committed to the Harris County Jail.   Fountain filed this original habeas corpus proceeding, and we ordered her released on bail pending resolution of the proceeding.   The case was set for submission on September 11, 2012 and this Court denied relief with written opinions issued on December 28, 2012.

On January 2, Fountain filed a motion for rehearing, in which she informed the Court, for the first time, of an agreement between the parties dated December 12, 2012, whereby real party in interest Kathy Katcher agreed that "[t]he current enforcement shall be dismissed with prejudice," though the parties now disagree about the timing issues and effect of that agreement. Katcher contends that the enforcement action would not be dismissed until June 2013, and Fountain concedes that "a reading" of the agreement "may also support the position" that the agreement did not require that this Court be informed of the agreed dismissal of the enforcement action until after the entry of a final order anticipated "after June 2013."   Despite the foregoing, Fountain requests in her motion for rehearing that we now "issue a writ of habeas corpus."

As part of her response to the motion for rehearing, Katcher requested that we abate this proceeding until July 1, 2013 to permit the parties to effectuate their agreement.   The request for abatement is **granted**, and this case is **abated**.

This case is removed from this court's active docket until further order of this court.   The parties shall timely notify this court of all events affecting the status of this case, including when the trial court has entered a final order.   The parties shall file either a status report or a motion to dismiss by **July 1, 2013**.

It is so ORDERED.


Judge's signature: /s/ Michael Massengale
                         Acting for the Court

Panel consists of Justices Keyes, Massengale, and Brown



Date: January 29, 2013

ACCEPTED
221EFJ017573082
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 July 1 P3:00
Christopher A. Prine
CLERK

NO. 01-12-00704-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
7/1/2013 3:00:01 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS
## HOUSTON DIVISION

## IN RE TAMMY FOUNTAIN, RELATOR

## STATUS REPORT OF KATHY KATCHER

**Linda Marshall**
**SBT 13031700**
**5020 Montrose, Suite 700**
**Houston TX 77084**
**Telephone: 713-651-1313**
**Fax:  713-654-9898**
**lgmlaw@airmail.net**

**ATTORNEY FOR KATHY KATCHER**

TO THE HONORABLE COURT OF APPEALS:

This is a habeas corpus proceeding. The Honorable Sheri Y. Dean held TAMMY FOUNTAIN in contempt. TAMMY FOUNTAIN filed a petition for writ of mandamus, which was denied. TAMMY FOUNTAIN then filed a motion for rehearing, which this Court abated to allow the trial court to conduct a status conference during the month of June 2013.

The trial court set the status conference for July 2, 2013.

TAMMY FOUNTAIN has filed a request for continuance, her latest attorney having withdrawn, to hire another.

Therefore, to date, there has been no status conference and no final order of the trial court.

Respectfully submitted,

/s/ Linda Marshall

LINDA MARSHALL
SBT 13031700
5020 Montrose, Suite 700
Houston TX 77084
Telephone 713-651-1313
Fax 713-654-9898
lgmlaw@airmail.net

## CERTIFICATE OF SERVICE

I certify that I delivered a copy of the foregoing pleading to Tammy Fountain via first class mail and email on July 1, 2013.



## ORDER

Cause No   01-12-00704-CV; *In re Tammy Fountain*, Relator

Original Proceeding on Petition for Writ of Habeas Corpus from *Order Revoking Suspension and for Commitment to County Jail*, Cause No. 2010-31997, in the 309th District Court of Harris County, Texas.

Relator Tammy Fountain was found in contempt of the trial court's orders in an order dated May 24, 2012.  Fountain filed this original habeas corpus proceeding, and we ordered her released on bail pending resolution of the proceeding.  This court denied relief with written opinions issued on December 28, 2012.  On January 2, Fountain filed a motion for rehearing, in which she informed the court of a rule 11 agreement between the parties, dated December 12, 2012, whereby real party in interest Kathy Katcher agreed that "[t]he current enforcement shall be dismissed with prejudice."  Katcher requested that we abate the proceeding until July 1, 2013 to permit the parties to effectuate their agreement.  We granted the request for abatement and ordered the parties to file a status report or a motion to dismiss by July 1, 2013.  We also ordered the parties to timely notify the court of all events affecting the status of the case.

Katcher filed a status report on July 1, 2013, informing the court that a status conference has been set for July 2, 2013 and that Fountain filed a motion for continuance to hire another attorney.

The parties shall file an updated status report or a motion to dismiss **within 3 days** of any further status conference held in the trial court.   Additionally, the parties shall inform this court no later than **August 9, 2013**:

a. Whether the trial court has been requested to enter a final order as referenced in paragraph 13 of the parties' rule 11 agreement dated December 12, 2012, and if not, why not;

b. Whether Katcher has dismissed her enforcement petition with prejudice as referenced in paragraph 14 of the parties' rule 11 agreement dated December 12, 2012, and if not, why not;

c. Whether this original proceeding has become moot for any reason; and

d. Whether there is any reason why this original proceeding should not be reinstated on the court's active docket.

To the extent this original proceeding is not moot, Katcher is requested to provide the court of appeals with any revised or supplemental response to the motion for rehearing no later than **August 9, 2013**.

It is so ORDERED.


Judge's signature: /s/ Michael Massengale
                          Justice Massengale, Acting Individually

Panel consists of Justices Keyes, Massengale, and Brown



Date: July 2, 2013

ACCEPTED
221EFJ017644491
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 August 9 A11:43
Christopher A. Prine
CLERK

NO. 01-12-00704-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

8/9/2013 11:43:07 AM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS
## HOUSTON DIVISION

## IN RE TAMMY FOUNTAIN, RELATOR

## STATUS REPORT OF KATHY KATCHER

**Linda Marshall**
**SBT 13031700**
**5020 Montrose, Suite 700**
**Houston TX 77084**
**Telephone: 713-651-1313**
**Fax:  713-654-9898**
**lgmlaw@airmail.net**

**ATTORNEY FOR KATHY KATCHER**

TO THE HONORABLE COURT OF APPEALS:

This is a habeas corpus proceeding. The Honorable Sheri Y. Dean held TAMMY FOUNTAIN in contempt. TAMMY FOUNTAIN filed a petition for writ of mandamus, which was denied. TAMMY FOUNTAIN then filed a motion for rehearing, which this Court abated to allow the trial court to conduct a status conference during the month of June 2013.

A status conference was held on July 2, 2013. At that status conference, at which testimony was taken from MS. FOUNTAIN, the trial judge ordered temporary custody to KATHY KATCHER and a psychological evaluation to be performed on MS. FOUNTAIN. No further action will be taken until there is at least a preliminary report from Dr. Ed Silverman, who is performing the evaluation. This preliminary report was to have been made by August 14 at the latest; however, Dr. Silverman has notified the parties that he cannot meet that deadline. The status conference was recessed until August 14, 2013; given Dr. Silverman's inability to provide a report by that date, it is likely it will again be recessed.

Respectfully submitted,

/s/ Linda Marshall

LINDA MARSHALL
SBT 13031700
5020 Montrose, Suite 700
Houston TX 77084

Telephone 713-651-1313
Fax 713-654-9898
lgmlaw@airmail.net

## CERTIFICATE OF SERVICE

I certify that I delivered a copy of the foregoing pleading to all attorneys herein by facsimile transmission and email on August 9, 2013.

_____

Linda Marshall



**ORDER**

Cause No 01-12-00704-CV; *In re Tammy Fountain*, Relator

Original Proceeding on Petition for Writ of Habeas Corpus from *Order Revoking Suspension and for Commitment to County Jail*, Cause No. 2010-31997, in the 309th District Court of Harris County, Texas.

Relator Tammy Fountain was found in contempt of the trial court's orders in an order dated May 24, 2012. Fountain filed this original habeas corpus proceeding, and we ordered her released on bail pending resolution of the proceeding. Finding no error in the trial court's contempt finding, this court denied habeas corpus relief with written opinions issued on December 28, 2012.

On January 2, Fountain filed a motion for rehearing, in which she belatedly informed the court of a rule 11 agreement between the parties in their ongoing proceeding in the family court, dated December 12, 2012. The agreement concerned various matters including: details about scheduling possession of a child during holidays; details about supervision, upbringing, and medical care of the child; a dispute resolution procedure; and payment of attorney's fees. In addition, the specific portions of the agreement that relate to the habeas corpus proceeding filed in this court are as follows:

13. This agreement is to temporary orders with a status conference in June 2013 except # 11, 12, 14, which will be part of a final order.

14. The current enforcement shall be dismissed with prejudice. Ms. Katcher shall inform the Court of Appeals she no longer opposes the pet. for habeas corpus.

Katcher responded to the motion for rehearing, offering the explanation that "The intent of the parties as reflected in the agreement was that they would perform under the agreement for a 6-month period — until June 2013 — at which time they would attend a status conference in the trial court to obtain a final order." Katcher

requested that we abate the proceeding until July 1, 2013 to permit the parties to effectuate their agreement. We granted the request for abatement and ordered the parties to file a status report or a motion to dismiss by July 1, 2013. We also ordered the parties to timely notify the court of all events affecting the status of the case.

Katcher filed a status report on July 1, 2013, informing the court that a status conference has been set for July 2, 2013 and that Fountain filed a motion for continuance to hire another attorney. We requested than a further update be provided within three days of any further status conference, specifically requesting updates about (a) any request that the trial court enter a final order as referenced in paragraph 13 of the parties' rule 11 agreement dated December 12, 2012, (b) any dismissal of Katcher's enforcement petition with prejudice as referenced in paragraph 14 of the agreement, (c) any other developments that may have mooted this original proceeding, and (d) any reason why this original proceeding should not be reinstated.

Neither party filed the requested report within three days of the hearing. Over thirty days later, on August 9, Katcher filed another status report, informing us that:

> A status conference was held on July 2, 2013. At that status conference, at which testimony was taken from MS. FOUNTAIN, the trial judge ordered temporary custody to KATHY KATCHER and a psychological evaluation to be performed on MS. FOUNTAIN. No further action will be taken until there is at least a preliminary report from Dr. Ed Silverman, who is performing the evaluation. This preliminary report was to have been made by August 14 at the latest; however, Dr. Silverman has notified the parties that he cannot meet that deadline. The status conference was recessed until August 14, 2013; given Dr. Silverman's inability to provide a report by that date, it is likely it will again be recessed.

Fountain filed her own status report on August 21. In response to the specific inquiries in our July 2 order, it advised

a. "the trial court has not been requested to enter a final order as referenced in paragraph 13 of the parties' rule 11 agreement dated December 12, 2012. The issue is awaiting a judge/attorney conference."
b. "Katcher has not dismissed her enforcement petition with prejudice as referenced in paragraph of the parties' rule 11 agreement dated December 3 12, 2012 because the parties are awaiting the judicial conference."
c. She contends that the original proceeding is not moot "at this time."
d. She further contended, "This case should not be reinstated on the court's active docket as the agreement has not been entered, perfected, or set aside. The parties are awaiting the pleasure of the Court, who is addressing the best interest of the child's issues at this point."

It is the internal operating procedure of this court to attempt to resolve motions for rehearing within 30 days. Nevertheless an abatement was ordered, at Katcher's request, to allow the parties six months to implement their agreement which contemplated a resolution by June 2013. Now nearly nine months after our original opinions, there still is no apparent resolution. The abatement cannot continue indefinitely and the parties have not given us any indication that the matter will be concluded within short order.

It bears reiteration that this original proceeding was filed well over a year ago, in May 2012, to challenge the revocation of the suspension of an order committing Fountain to a 60-day jail term. Fountain did not remain incarcerated pending our consideration of the habeas corpus petition, and no party has indicated that she was jailed at any time after this court declined to order habeas corpus relief. Moreover, this court's resolution of the habeas corpus proceeding does not preclude the parties from conducting further proceedings before the trial court with respect to the contempt finding, including presenting for that court's consideration whatever agreements the parties may reach concerning their dispute. But in any case, the pending motion for rehearing notwithstanding, this court cannot be bound by any agreement by the parties as to the granting of habeas corpus relief. Likewise, the fact that we found no error in the trial court's order does not preclude the trial court from implementing the parties' agreements with respect to the contempt finding.

3

In light of the foregoing, we lift our prior order of abatement, and we direct the Clerk of the court to reinstate the case on the court's docket. Any further submission relating to the pending motion for rehearing should be filed no later than Tuesday, October 1.

It is so ORDERED.

Judge's signature: /s/ Michael Massengale
                    Justice Massengale, Acting for the Court

Panel consists of Justices Keyes, Massengale, and Brown

Date: September 24, 2013

4

ACCEPTED
221EFJ017740175
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 September 27 P2:33
Christopher A. Prine
CLERK

NO. 01-12-00704-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/27/2013 2:33:16 PM
CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS
## FOR THE FIRST DISTRICT OF TEXAS
## HOUSTON DIVISION

## IN RE TAMMY FOUNTAIN, RELATOR

## MOTION TO ENFORCE PARTIES' RULE 6.6 AGREEMENT

**Linda Marshall**
**SBT 13031700**
**5020 Montrose, Suite 700**
**Houston TX 77084**
**Telephone: 713-651-1313**
**Fax: 713-654-9898**
**lgmlaw@airmail.net**

## ATTORNEY FOR KATHY KATCHER

TO THE HONORABLE COURT OF APPEALS:

Real Party, Kathy Katcher, files this Motion to Enforce the Parties' Rule 6.6

Agreement, which is attached.

Respectfully submitted,

/s/ Linda Marshall

LINDA MARSHALL
SBT 13031700
5020 Montrose, Suite 700
Houston TX 77084
Telephone 713-651-1313
Fax 713-654-9898
lgmlaw@airmail.net

**CERTIFICATE OF SERVICE**

I certify that I delivered a copy of the foregoing pleading to all attorneys
herein by facsimile transmission and email on September 27, 2013.

/s/  Linda Marshall
Linda Marshall

**01-12-0704-CV**

## IN THE FIRST COURT OF APPEALS
## HOUSTON, TEXAS

**IN RE TAMMY FOUNTAIN,**
*Relator.*

**THE PARTIES= RULE 6.6 AGREEMENT**

Relator, Tammy Fountain (Fountain), and Real Party in Interest, Kathy Katcher (Katcher), file this Rule 6.6 Agreement and would respectfully show:

### A. Introduction.

1.  Fountain sought habeas relief, which this Court denied on December 28, 2012.

2.  Fountain filed a motion for rehearing and notified the Court that the parties had reached an agreement.

3.  Katcher filed a response and sought an abatement, which the Court granted.

4.  On September 24, 2013, the Court lifted the abatement and directed that the parties file any further submissions by October 1, 2013.

5.  The parties submit this agreement in response to the Court=s order.

## B. Rule 6.6 Agreement

6.  Rule 6.6 permits parties or their counsel to file an enforceable agreement in the appellate court if the agreement is in writing and signed by the parties or their counsel. TEX.R.APP.P. 6.6.

7.  The parties file this agreement in accordance with Rule 6.6.

    - Fountain agrees to withdraw and hereby withdraws her motion for rehearing; and

    - Katcher agrees not to seek enforcement of the trial court's contempt order of May 24, 2012, or the revocation order of July 31, 2012. [1]

## C. Prayer

Therefore the parties ask that the Court treat Fountain's motion for rehearing as withdrawn and take no further action in this habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond.

Respectfully submitted,

/s/ Linda Marshall

LINDA MARSHALL (13031700)
5020 Montrose, Suite 700
Houston TX 77006

---

[1] Upon filing of this agreement in the trial court, the parties also agree that this constitutes an enforceable agreement under TEX.R.CIV.P. 11.

Telephone 713 651-1313
Fax 713 654-9898
lgmlaw@airmail.net
*Counsel for Real Party Katcher*


/s/  Daniel J. Lemkuil_____

DANIEL J. LEMKUIL (00789448)
1314 Texas Avenue, Suite 1515
Houston TX 77002
Telephone 713 993-9100
Fax 713 225-0099
*Counsel for Relator Fountain*

5

## CERTIFICATE OF SERVICE

A true and correct copy of this ***Rule 6.6 Agreement*** has been forwarded to all counsel of record on ___*September 27*___, 2013, as follows:

Daniel J. Lemkuil
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
(*Via facsimile and email*)

/s/ Linda Marshall
Linda Marshall



ORDER

Appellate case name:      In re Tammy Fountain, Relator

Appellate case number:    01-12-00704-CV

Original Proceeding on Petition for Writ of Habeas Corpus

      Real Party in Interest Kathy Katcher has filed a "Motion to Enforce Parties' Rule 6.6 Agreement." The motion is GRANTED, and accordingly the motion for rehearing filed by relator Tammy Fountain is DISMISSED pursuant to the parties' Rule 6.6 agreement.


      It is so ORDERED.


Judge's signature: /s/ Michael Massengale_____
              ☐ Acting individually    ☒ Acting for the Court

Panel consists of Justices Keyes, Massengale, and Brown.

Date:  October 15, 2013_____

ACCEPTED
221EFJ017775658
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 October 17 P4:34
Christopher A. Prine
CLERK

**THE LAW OFFICE OF DANIEL J. LEMKUIL**
**1314 TEXAS AVE., SUITE 1515**
**HOUSTON, TX 77002**
**713-993-9100 (TEL)**
**713-225-0099 (FAX)**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/17/2013 4:34:55 PM
CHRISTOPHER A. PRINE
Clerk

October 17, 2013

*VIA E-FILING*
Hon. Christopher A. Prine
Clerk of the Court
First Court of Appeals
301 Fannin
Houston, Texas 77002

**RE:      No.  01-12-00704-CV; In re Tammy Fountain, in the Court**
**of Appeals for the First District at Houston.**

To the Clerk of the Court:

This is a request to modify, correct or reform this Court's October 15, 2013 order dismissing the motion for rehearing filed by relator, Tammy Fountain pursuant to the parties' Rule 6.6 Agreement.

The Motion to Enforce the Parties' Rule 6.6 Agreement, filed on September 27, 2013, included the following payer:

> "Therefore the parties ask that the Court treat Fountain's motion for rehearing as withdrawn and take no further action in this habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond."

This Court's October 15, 2013 order does not address the agreement that the Relator not be remanded to custody and that the bond be released.

Relator respectfully requests that this Court correct, modify, or reform its October 15, 2013 Order to address these issues.

1

Respectfully submitted,


*Law Office of Daniel J. Lemkuil*

  /s/ Daniel J. Lemkuil
Daniel J. Lemkuil
State Bar No. 00789448
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
Telephone: (713) 993-9100
Facsimile:(713) 225-0099
daniel_lemkuil@flash.net
ATTORNEY FOR RELATOR


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was served upon all parties or counsel of record in accordance with the Texas Rules of Appellate Procedure on October 17, 2013.


  /s/ Daniel J. Lemkuil
Daniel J. Lemkuil
Attorney for Relator

ACCEPTED
221EFJ017250669
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 January 2 P5:17
M KARINNE McCULLOUGH
CLERK

NO. 01-12-00704-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/2/2013 5:17:53 PM

CHRISTOPHER A. PRINE
Clerk

## IN THE COURT OF APPEALS

### FIRST DISTRICT

### HOUSTON, TEXAS

## IN RE TAMMY FOUNTAIN, RELATOR

## RELATOR'S MOTION FOR REHEARING

from an
"Order Revoking Suspension and for Commitment to County Jail"
in Cause No. 2010-31997
in the 309th Judicial District Court of Harris County, Texas

Daniel J. Lemkuil
State Bar No. 00789448
1314 Texas Ave., Suite 1515
Houston, TX 77002
713-993-9100
713-225-0099 (fax)
dlemkuil@flash.net
Attorney for Relator

1

---

## RELATOR'S MOTION FOR REHEARING
_____

Relator, TAMMY FOUNTAIN, submits this motion for rehearing in response to the opinion issued by the Court on December 28, 2012, and respectfully requests that the Court consider the following:

## I.
## Justice Keyes's Dissenting Opinion Properly Analyzes this Case

Justice Keyes's dissenting opinion correctly finds that Relator's order revoking the suspension of commitment is in fact protected by the same statutory and constitutional procedural safeguards that apply to contempt proceedings. Keyes, J. dissenting, Slip Op. at 14-15. As Justice Keyes points out, the majority cites no authority for its holding. *Id.* at 15. This Court's opinion has therefore created law that is contrary to well established principles of enforcement proceedings, overly complicating an already confusing body of case law. Therefore, this Court should grant rehearing to reconsider its ruling.

## II.
## The Parties Agreed to the Relief Requested Prior to this Court's Opinions

Even if this Court declines to grant rehearing based on the foregoing, Relator asks the Court to grant rehearing because the parties agreed by Rule 11 to the requested relief prior to the issuance of this Court's opinion.

2

Specifically, on December 12, 2012, the parties agreed to dismiss the underlying enforcement proceeding with prejudice and KATHY KATCHER, Real Party in Interest, agreed to notify this Court that she does not oppose this habeas corpus proceeding. A certified copy of the December 12, 2012 Rule 11 Agreement is attached hereto as Appendix A. The Rule 11 Agreement states as follows:

> "13. This agreement is to temporary orders with a status conference in June 2013 **except #11, 12, 14**, which will be part of a final order:
>
> 14. The current enforcement **shall be dismissed with prejudice. Ms. Katcher shall inform that Court of Appeals that she no longer opposes the pet. for habeas corpus**."

Appendix A at 3 (emphasis added).

It is important to note that it was the duty of KATHY KATCHER, Real Party in Interest, to notify this Court that she does not oppose the habeas proceeding. To date, she has not done so.

The temporary orders that are the subject of the December 12, 2012 Rule 11 Agreement are set for entry on January 3, 2013 in the trial court. Even though the December 12, 2012 Rule 11 Agreement has not yet been reduced to a final judgment, it demonstrates a clear intent to compromise on this issue and this Court should grant rehearing to grant the unopposed requested relief, set aside the expressed order, and grant habeas as unopposed.

3

## Prayer

For the reasons stated in this motion for rehearing, Relator, TAMMY FOUNTAIN, asks this Honorable Court to grant this motion for rehearing, withdraw its opinion, and issue a writ of habeas corpus as unopposed on the basis of the expressed dissent.

Respectfully submitted,

/s/ Daniel J. Lemkuil

_____
Daniel J. Lemkuil
State Bar No. 00789448
1314 Texas Avenue, Suite 1515
Houston, TX 77002
713-993-9100
713-225-0099 (fax)
Attorneys for Relator

## Certificate of Service

I hereby certify that on January 2, 2013 a true and correct copy of this document was sent to:

Linda Marshall
5020 Montrose, Suite 700
Houston, TX 77006
Attorney for Real Party in Interest
Via Facsimile

Daryl L. Moore
1005 Heights Boulevard
Houston, Texas 77008
Attorney for Real Party in Interest
Via e-service

/s/ Daniel J. Lemkuil

_____
Daniel J. Lemkuil

## Certification

I hereby certify that I have reviewed this motion and concluded that every factual statement in the petition is supported by competent evidence included in the appendix or record.

/s/ Daniel J. Lemkuil

_____

Daniel J. Lemkuil

## Appendix

1.    Rule 11 Agreement, signed and filed in the trial court on December 12, 2012

# APPENDIX A

In The Interest of
[REDACTED]

2010 31997

309th District Court

Harris County, TX

AGREEMENT

non-expanded

1. Ms. Katcher would have possession according to a Standard Possession Order starting Jan. 4, 2013 except: (po)
(1) Christmas, Spring Break, Thanksgiving (per SPO) will be switched odd/even years
(2) Ms. Katcher will have poss. for Father's Day weekend.
(3) No mid-week (Thursday) possession
(4) Extended summer possession to be exercised in 3 periods of possession separated by at least a week.
(5) Ms. Fountain delivers the child to Ms. Katcher's residence and Ms. Katcher returns the child to Ms. Fountain's residence, at the Barnes & Noble in Clear Lake

2. Restriction on S[REDACTED] S[REDACTED] being supervised is removed.

Ms. Katcher
3. Agree that Kathy shall be referred to by the child as his "God parent".

4. Ms. Katcher's family shall be referred to as [REDACTED] family.

5. Dr. Hunt shall be the child's sole mental health provider unless the parties agree in writing otherwise.

6. Dr. Hunt or any successor therapist shall not testify in any proceeding except as required by law.

7. Ms. Katcher may consult with Dr. Hunt or any other mental health care provider for the child and meet with the therapists as requested by the therapist (and child)

8. Parenting ~~Coordinators~~ Partnerships (~~Susan Marsh and Deborah Carter~~) ← shall be appointed parenting coordinator. Each party shall pay 50%.

9. The parties will attend at least six sessions of ~~divorce~~ High Conflict Therapy with a therapist selected by Mary Quinn.

10. Through 2017, any dispute involving the child shall be submitted to ~~binding~~ as amicus ~~arbitration with~~ Mary Quinn, including but not limited to disputes over possession, conservatorship ~~compliance~~

terms and conditions, communication, injunctions, parental behavior before ~~any mod. to filed. If~~ Mary Quinn is unable to serve ~~as arbitrator~~ ~~resolve the issue~~ Then Court shall select the arbitrator. an arbitrator shall be recommend by Mary Quinn & failing agreement as to the Court. Any dispute shall be submitted to the parenting coordinator before it goes to arbitration. Arbitration shall not apply to enforcement actions or emergency motions for relief.

11. Judgment in Linda Marshall's favor against Ms. Fountain of $13,000.00 shall be entered to be paid $1,000.00 by January 15, 2013 and $300.00 a month on the 15th of each month thereafter

12. All other orders, not modified hereby, remain in effect

13. This agreement is to temporary order with a status conference, except #11, 12, 14 which will be in June 2013 part of a final order.

14. The current enforcement shall be dismissed with prejudice. Ms. Katcher shall inform the Court of Appeals she no longer opposes the peti. for habeas corpus

(3)

Signed 12/12/2012

_____
Petitioner

_____
Respondent

_____
Counsel for Petitioner

_____
Counsel for Respondent

_____
Amicus

(4)



STATE OF TEXAS
COUNTY OF HARRIS

I, Chris Daniel, District Clerk of Harris County, Texas, certify that
this is a true and correct copy of the original submitted and or recorded
in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this 01-02-13

CHRIS DANIEL, DISTRICT CLERK
HARRIS COUNTY, TEXAS

_____ Deputy

ACCEPTED
221EFJ017253947
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 January 4 P1:44
CHRISTOPHER A. PRINE
CLERK

**THE LAW OFFICE OF DANIEL J. LEMKUIL**
**1314 TEXAS AVE., SUITE 1515**
**HOUSTON, TX 77002**
**713-993-9100 (TEL)**
**713-225-0099 (FAX)**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

1/4/2013 1:44:11 PM

CHRISTOPHER A. PRINE
Clerk

January 4, 2013

Hon. Christopher A. Prine
Clerk of the Court
First Court of Appeals
301 Fannin St.
Houston, Texas 77002

RE: **NO. 01-12-00704-CV; IN RE TAMMY FOUNTAIN; IN THE COURT OF APPEALS FOR THE FIRST DISTRICT, HOUSTON, TEXAS**

**SUPPLEMENT TO MOTION FOR REHEARING**

To the Honorable Justices of the First Court of Appeals:

Please allow this letter to serve as a supplement to TAMMY FOUNTAIN, Relator's Motion for Rehearing, filed January 2, 2013.

As stated in Relator's Motion for Rehearing, a December 12, 2012 Rule 11 Agreement in the underling proceeding provides that Real Party in Interest, KATHY KATCHER, will inform the Court of Appeals that she does not oppose this habeas corpus proceeding. *See* Appendix A to Motion for Rehearing at 3. To the extent that Relator asserted that this duty to inform the Court of Appeals has already occurred, Relator concedes that a reading of the Rule 11 Agreement may also support the position that such a duty to inform this Court of the agreement will not arise until after June 2013.

1

Respectfully submitted,

/s/ Daniel J. Lemkuil

_____

Daniel J. Lemkuil
State Bar No. 00789448
1314 Texas Avenue, Suite 1515
Houston, TX 77002
713-993-9100
713-225-0099 (fax)
Attorneys for Relator

## Certificate of Service

I hereby certify that on January 4, 2013 a true and correct copy of this document was sent to:

| | |
|---|---|
| Linda Marshall | Daryl L. Moore |
| 5020 Montrose, Suite 700 | 1005 Heights Boulevard |
| Houston, TX 77006 | Houston, Texas 77008 |
| Attorney for Real Party in Interest | Attorney for Real Party in Interest |
| Via Facsimile | Via e-service |

/s/ Daniel J. Lemkuil

_____

Daniel J. Lemkuil



COURT OF APPEALS FOR THE
FIRST DISTRICT OF TEXAS AT HOUSTON

——————————

In re Tammy Fountain, Relator

No. 01-12-00704-CV

Original Proceeding on Petition for Writ of Habeas Corpus
——————————

ORDER

In a letter to the clerk of the court, counsel for relator asked that we "correct, modify, or reform" our October 15, 2013 order to address a provision of the parties' Rule 6.6 agreement which stated that they "ask that the Court . . . take no further action in this habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond."

This court ordered relator discharged on execution and filing of a bond in the amount of $500. *See* Tex. R. App. P. 52.8(b)(3). Subsequently we denied the petition for writ of habeas corpus, and the real party in interest agreed not to seek enforcement of the trial court's contempt order of May 24, 2012 or the revocation order of July 31, 2012. In light of the parties' agreement, the trial court may, in its discretion, vacate its July 31, 2012 order, and it may order that the bond be released.

IT IS SO ORDERED.

Judge's signature:  /s/ Michael Massengale_____
                    ☐ Acting individually   ☒ Acting for the Court

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Date: November 7, 2013



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

### NO. 01-12-00704-CV

_____

### IN RE TAMMY FOUNTAIN, Relator

---

### Original Proceeding on Petition for Writ of Habeas Corpus

---

### MEMORANDUM DISSENT FROM ORDER DATED NOVEMBER 7, 2013

This is an original habeas corpus proceeding arising out of an underlying proceeding to enforce a child custody agreement pending in the trial court.

Relator, Tammy Fountain, challenged the trial court's order of July 31, 2012, revoking its earlier suspension of her sentence for contempt for violating the

court's temporary orders and committing her to jail.[1] On December 28, 2012, this Court issued an opinion affirming the trial court's revocation order over my dissent. Unknown to this Court, the parties had filed a Rule 11 Agreement in the trial court on December 12, 2012. One of the provisions of the Rule 11 Agreement was the agreement of real party in interest, Kathy Katcher, to drop the enforcement proceeding once the trial court approved the settlement agreement. The trial court's approval was contingent on the parties' performing under the agreement for six months.

On January 2, 2013, Fountain filed a motion for rehearing, in which she requested withdrawal of this Court's December 28, 2012 opinion. At Katcher's request, this Court abated proceedings on Fountain's motion so that the parties could finalize their settlement agreement with regard to the enforcement proceeding as set out in their Rule 11 Agreement. The trial court has repeatedly moved back the date for a status conference, scheduled in the Rule 11 Agreement for June 2013 and referenced in the Rule 11 Agreement as a condition precedent to finalization of the Agreement. Therefore, the Agreement has not been finalized. Nor has it been withdrawn.

---

[1] The underlying case is *Kathy Katcher v. Tammy Fountain*, No. 2010-31997, in the 309th District Court of Harris County, Texas, the Honorable Sheri Y. Dean, presiding.

Despite the still-pending settlement agreement, on September 24, 2013, this Court, sua sponte, lifted its abatement of the habeas corpus proceeding and advised the parties that it intended to deny Fountain's motion for rehearing.

The parties responded by filing an agreement pursuant to Texas Rule of Appellate Procedure 6.6, asking this Court to "treat Fountain's motion for rehearing as withdrawn and take no further action in this habeas proceeding," not to enter an order remanding Fountain to custody, and to release a bond that this Court had required pending resolution of the habeas corpus proceedings.

This Court issued an order on October 15, 2013, that dismissed the motion for rehearing but that did not address the parties' other requests.

On October 17, 2013, Fountain filed a "request to modify, correct or reform this Court's October 15, 2013 order dismissing the motion for rehearing filed by relator, Tammy Fountain pursuant to the parties' Rule 6.6 Agreement."

The panel majority now issues an advisory opinion in the form of an Order advising the trial court that, "[i]n light of the parties' agreement, the trial court may, in its discretion, vacate its July 31, 2012 order, and it may order that the bond be released." The order itself does not release the bond.

Because I believe that the panel majority lacks the power to advise the trial court regarding the exercise of the trial court's powers and that the majority has failed to honor the terms of the parties' Rule 11 and Rule 6.6 Agreements, has

3

overstepped its own jurisdiction in issuing an advisory opinion to the trial court, and has failed to dispose of all issues before it that are necessary to the final resolution of this dispute—namely, by failing to order release of the bond that this Court had previously required—I dissent.

I would have honored the terms of the parties' Rule 11 and Rule 6.6 Agreements and the provisions of Texas Rule of Appellate Procedure 42.1(a)(2)(C), governing voluntary dismissal of civil cases by agreement of the parties, pursuant to which we abated the habeas proceedings in this Court. I would not have lifted our order of abatement, and I would not now issue an order advising the trial court of its options. Because the abatement was nevertheless lifted and the motion for rehearing of this Court's December 28, 2012 opinion was dismissed pursuant to the parties' Rule 6.6 Agreement, I would treat the motion for rehearing as withdrawn and I would release the bond. I note that this Court's October 15, 2013 order dismissing the motion for rehearing contains no order remanding Fountain to custody.

## Background

Fountain filed this original habeas corpus proceeding to challenge the trial court's July 31, 2012 order revoking its earlier suspension of a contempt sentence it had imposed on her in the underlying enforcement proceeding for violation of temporary orders entered in a child custody dispute.

4

On August 3, 2012, in response to Fountain's request, this Court issued a memorandum order ordering the Sheriff of Harris County to discharge Fountain from custody upon execution and filing of a $500 bond with the Sheriff.

On December 28, 2012, the majority issued an opinion upholding the trial court's revocation of its order suspending commitment. I dissented. I agreed with Fountain that the commitment order was void and that her commitment to jail violated her constitutional right to due process of law. I would have granted the habeas corpus petition, and I would have ordered Fountain discharged.

On January 2, 2013, five days after issuance of this Court's opinions in the underlying habeas proceeding, Fountain filed a motion for rehearing that, inter alia, informed the Court that "the parties agreed by Rule 11 to the requested relief prior to the issuance of this Court's opinion." Fountain stated that, specifically, the parties agreed to dismiss the underlying enforcement proceeding and Katcher agreed to notify this Court that she does not oppose the habeas proceeding. The motion also stated, "The temporary orders that are the subject of the December 12, 2012 Rule 11 Agreement are set for entry on January 3, 2013 in the trial court." Fountain asked that this Court "grant this motion for rehearing, withdraw its opinion, and issue a writ of habeas corpus as unopposed on the basis of the expressed dissent."

5

On January 15, 2013, Katcher responded to Fountain's motion for rehearing. A copy of the signed agreement, file stamped December 12, 2012, by the district clerk, was attached. Katcher stated, "On December 12, 2012, trial counsel for the parties met and negotiated a preliminary settlement agreement of their underlying enforcement dispute." She further stated, "The intent of the parties as reflected in the agreement was that they would perform under the agreement for a 6-month period—until June 2013—at which time they would attend a status conference in the trial court to obtain a final order." Katcher stated that she agreed to drop the enforcement proceeding, but that the "expressed intent" of the agreement in paragraph 14 "was that the enforcement agreement would not be dismissed until June 2013, and that her duty to inform this Court of the preliminary agreement did not arise until after June 2013—after a status conference and after the agreement became final."

Katcher requested that this Court abate the habeas proceeding until July 1, 2013. She explained,

> The abatement will permit the parties to perform under the agreement, and will allow the trial court to conduct a status conference in June 2013 and enter a final order if the parties have performed under the agreement. Then, if the agreement is performed, [Katcher] will dismiss the underlying enforcement proceeding and—per paragraph 14 of the agreement—notify the Court that the habeas proceeding has been rendered moot.

In a "Supplement to Motion for Rehearing," filed January 4, 2013, Fountain conceded that "a reading of the Rule 11 Agreement may also support the position that such a duty to inform this Court of the agreement will not arise until after June 2013."

This Court issued an order abating proceedings on Fountain's motion for rehearing until July 1, 2013. The order required that the parties "timely notify this court of all events affecting the status of this case, including when the trial court has entered a final order" and that they "file either a status report or a motion to dismiss by **July 1, 2013**."

On July 1, 2013, Katcher filed a status report informing this Court that the trial court had set the status conference required by the Rule 11 Agreement, which had been requested for June, for July 2, 2013, and, therefore, there was no final order of the trial court in the underlying enforcement proceeding.

The next day, July 2, the authoring judge of the December 28, 2012 opinion, acting individually, issued an order requiring the parties to "file an updated status report or a motion to dismiss **within 3 days** of any further status conference held in the trial court." The order also required the parties to satisfy a number of other conditions. It required the parties to "inform this court no later than **August 9, 2013**" whether the trial court had been requested to enter a final order and "if not, why not." It required that this Court be told whether Katcher had dismissed her

7

enforcement petition with prejudice; "[w]hether this original proceeding has become moot for any reason"; and "[w]hether there is any reason why this original proceeding should not be reinstated on the court's active docket." The order also stated, "To the extent this original proceeding is not moot, Katcher is requested to provide the court of appeals with any revised or supplemental response to the motion for rehearing no later than **August 9, 2013.**"

On August 9, 2013, Katcher filed a status report in response to the July 2, 2013 order. She reported that a status conference had been held on July 2, 2013, and that the trial judge ordered temporary custody of the minor child to Katcher and ordered a psychological evaluation of Fountain. The report stated that no further action would be taken in the trial court until there was "at least a preliminary report" from the physician performing the psychological evaluation. The status report further stated that the preliminary report was to have been performed by August 14, but that the physician had stated he could not meet that deadline, so the status conference in the trial court, which had been recessed until August 14, 2013, was likely to be recessed again.

On August 21, 2013, Fountain likewise filed a status report. She reported that the parties were "to confer with the trial court regarding disposition of the underlying enforcement action," but that "[t]his event has not been formally set." She stated, "This case should not be reinstated on the court's active docket as the

agreement has not been entered, perfected, or set aside. The parties are awaiting the pleasure of the [trial] Court, who is addressing the best interests of the child's issues at this point."

On September 24, 2013, this Court lifted the abatement and directed that the parties file any further submissions relating to Fountain's motion for rehearing by October 1, 2013.

On September 27, 2013, in response to this Court's September 24, 2013 order, the parties submitted an agreement pursuant to Rule 6.6 together with a "Motion to Enforce Parties' Rule 6.6 Agreement." *See* TEX. R. APP. P. 6.6 (providing that parties or their counsel may file enforceable agreement in appellate court if agreement is in writing and signed by parties or their counsel). The Rule 6.6 Agreement provided:

- Fountain agrees to withdraw and hereby withdraws her motion for rehearing; and

- Katcher agrees not to seek enforcement of the trial court's contempt order of May 24, 2012, or the revocation order of July 31, 2012.

The parties further agreed, that, as a consequence of their having filed the Rule 6.6 Agreement in the trial court, the agreement also "constitutes an enforceable agreement under TEX. R. CIV. P. 11." The parties asked that this "Court treat Fountain's motion for rehearing as withdrawn and take no further action in this

9

habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond."

On October 15, 2013, this Court issued an order that granted Katcher's "Motion to Enforce Parties' Rule 6.6 Agreement" and dismissed Fountain's motion for rehearing "pursuant to the parties' Rule 6.6 agreement." The Court did not remand Fountain to custody and it did not release the bond.

On October 17, 2013, Fountain filed a "request to modify, correct or reform this Court's October 15, 2013 order dismissing the motion for rehearing filed by relator, Tammy Fountain pursuant to the parties' Rule 6.6 Agreement." Fountain reminded the Court that the motion to enforce the Rule 6.6 Agreement "included the following [prayer]: 'Therefore the parties ask that the Court treat Fountain's motion for rehearing as withdrawn and take no further action in this habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond.'" Fountain pointed out, "This Court's October 15, 2013 order does not address the agreement that the Relator not be remanded to custody and that the bond be released." Fountain requested that this Court "correct, modify, or reform its October 15, 2013 Order to address these issues."

In response to Fountain's motion to correct, modify, or reform the October 15, 2013 order, the majority issues an advisory opinion in the form of an order. It

10

advises the trial court, "In light of the parties' agreement, the trial court may, in its discretion, vacate its July 31, 2012 order, and it may order that the bond be released." The majority incorrectly informs the trial court that it has the discretion to release a bond that had been ordered by this Court and fails to honor the parties' Rule 6.6 Agreement and their Rule 11 Agreement.

I believe this Court—which granted abatement pursuant to the parties' request that we abate the proceedings until their Rule 11 Agreement dismissing the underlying enforcement action could be finalized in the trial court—erred in reinstating the habeas proceeding sua sponte. I believe the Court's actions have interfered with the parties' finalization of their settlement agreement—then, as now, pending in the trial court—and have violated Rule 42.1, governing voluntary dismissal of appeals in civil cases and providing for abatement to permit the trial court to effectuate a settlement agreement. I believe we have further erred in only partially granting the parties' Rule 6.6 Agreement, leaving the rest pending, and that we have compounded the error by issuing an advisory order to the trial court advising it as to the actions it may take while the parties' Rule 11 Agreement remains pending in that court and by refusing to release the bond that had been imposed by this Court—not by the trial court.

For the foregoing reasons, I dissent. I would not have lifted our abatement of the habeas corpus proceedings while the parties were still attempting to finalize

their Rule 11 Agreement in the trial court. And once the parties asked that we honor their Rule 6.6 Agreement, treat the motion for rehearing as withdrawn, and release the bond, I would have done so.

**Analysis**

Rule 42.1(a) allows an appellate court to dispose of a proceeding by voluntary dismissal in civil cases as follows:

(1) On Motion of Appellant. In accordance with a motion of appellant, the court may dismiss the appeal or affirm the appealed judgment or order unless disposition would prevent a party from seeking relief to which it would otherwise be entitled.

(2) By Agreement. In accordance with an agreement signed by the parties or their attorneys and filed with the clerk, the court may:

(A) render judgment effectuating the parties' agreements;

(B) set aside the trial court's judgment without regard to the merits and remand the case to the trial court for rendition of judgment in accordance with the agreements; or

(C) abate the appeal and permit proceedings in the trial court to effectuate the agreement.

TEX. R. APP. P. 42.1(a).

Rule 42.1 further provides:

(c) *Effect on Court's Opinion*. In dismissing a proceeding, the appellate court will determine whether to withdraw any opinion it has already issued. An agreement or motion of dismissal cannot be conditioned on withdrawal of the opinion.

TEX. R. APP. P. 42.1(c).

12

Texas Rule of Civil Procedure 11 provides, in relevant part, that, unless otherwise provided for in the rules, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record." TEX. R. CIV. P. 11. Rule 11 agreements are effectively contracts relating to litigation. *Golden Spread Elec. Coop., Inc. v. Denver City Energy Assocs., Inc.*, 269 S.W.3d 183, 190 (Tex. App.—Amarillo 2008, pet. denied). Thus, they are interpreted in the same manner as contracts. *Id*. When a settlement agreement satisfies the requirements of Rule 11—i.e., when it is written, signed, and filed in the records of the court, or is made in open court, and it has sufficiently definite terms to allow a court to determine the obligations of the parties—it is enforceable. *See Berg v. Wilson*, 353 S.W.3d 166, 172 n.9 (Tex. App.—Texarkana 2011, pet. denied). A settlement agreement must comply with Rule 11 to be enforceable. *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 690 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A trial court has a duty to enforce the terms of a Rule 11 agreement. *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007); *see In re F.C. Holdings, Inc.*, 349 S.W.3d 811, 815 (Tex. App.—Tyler 2011, orig. proceeding); *Scott-Richter v. Taffarello*, 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied) ("A trial court has a ministerial duty to enforce a valid Rule 11 agreement.").

A Rule 11 settlement agreement "touching upon" a suit in the Texas courts may be made at any time before execution of judgment. *See Coale v. Scott*, 331 S.W.3d 829, 831 (Tex. App.—Amarillo 2011, no pet). The trial court may enforce a Rule 11 agreement even if it was made even after the cause was tried and finally resolved via judgment if the agreement is in writing, signed and filed with the papers as part of the record, or made in open court and entered of record, as a trial court has continuing power to enforce its judgments after they become final. *See id.* at 831–32. This is the case because the agreement becomes a contract when it is executed, not when the trial court attempts to enforce it. *Id.* at 832. "[T]he trial court's order is simply a judgment enforcing a binding contract." *Id.*

Public policy favors settlement agreements. *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992); *Caballero v. Heart of Texas Pizza, L.L.C.*, 70 S.W.3d 180, 181 (Tex. App.—San Antonio 2001, no pet.) (per curiam). Hence, Rule 42.1(a) is designed to facilitate the appellate courts' power to dispose of cases that settle on appeal in accordance with the intent of the parties. *See Caballero*, 70 S.W.3d at 181.

Here, the proceeding the parties had sought in their Rule 11 Agreement to be dismissed was an original appellate proceeding seeking review of an incidental order in a pending underlying suit seeking enforcement of temporary child-custody orders. This Court had jurisdiction over the original proceeding, but the trial court

14

had, and still has, jurisdiction over the underlying enforcement proceeding, which the parties represent that they have settled, conditioned only upon (1) the performance of the terms of the agreement during the period between execution of the Rule 11 agreement on December 12, 2012, and June 2013, and (2) a status conference to have been held in the trial court in June 2013 to determine whether the parties had satisfactorily performed terms of the Rule 11 Agreement during the period prior to that time. This Court, therefore, properly abated the habeas proceeding upon request of the parties to permit the trial court to conduct proceedings to effectuate the terms of the settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(C).

There is no question that the settlement agreement was entered into to resolve an ongoing custody dispute in the trial court in which no final order had been issued. Thus, there is no question that the parties had the right to settle their dispute and that both the trial court—and this Court—had then and have now a ministerial duty to enforce the intent of the parties to that agreement. *See Fortis Benefits*, 234 S.W.3d at 651. A Rule 11 settlement agreement "touching upon" a suit in the Texas courts may be made at any time before execution of judgment. *See Coale*, 331 S.W.3d at 831. Here, in December 2012, while the habeas proceeding was pending in this Court, the parties settled the enforcement proceeding subject to the parties' performance under the terms of the agreement

until June 2013, and the parties so advised this Court. This Court was then plainly required by Rule 42.1 to abate the habeas proceeding in this Court upon request of the parties to permit proceedings in the trial court to effectuate the terms of their settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(C). And it initially did so.

One of the provisions in the parties' Rule 11 Agreement was the agreement to dismiss the habeas proceeding then pending in this Court. However, the parties also agreed to comply with specified provisions of the agreement as a condition precedent to the issuance of a final order by the trial court. The agreement, therefore, provided that the trial court would hold a status conference in June 2013 to determine whether the parties had performed under the Rule 11 Agreement, and, if they had, the agreement contemplated that the trial court would issue a final order. The parties agreed that when the final order issued, they would move to dismiss the habeas corpus proceeding in this Court as moot. The entry of a final order by the trial court upon performance of the terms of the Rule 11 Agreement prior to July 1 and the dismissal of the habeas corpus proceeding upon issuance of the trial court's final order were both made specific provisions of the Rule 11 Agreement. Dismissal of the habeas proceeding was clearly a material part of the consideration for that agreement.

Under Rule 11, the trial court had, and it still has, a duty to enforce the parties' settlement agreement, and it has a ministerial duty to sign a final order

16

respecting the parties' intentions as expressed in the agreement. *See Fortis Benefits*, 234 S.W.3d at 651. The trial court's final order is simply a judgment enforcing a binding contract. *See Coale*, 331 S.W.3d at 832. Likewise, this Court had a duty under Rule 42.1(a)(2)(C) to abate the habeas proceeding to permit the trial court to effectuate the settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(C); *Caballero*, 70 S.W.3d at 181.

No party complained to this Court that the trial court had failed to enforce the Rule 11 Agreement according to its terms or to perform its ministerial duty of executing a final order in accordance with those terms; and no party represented to this Court that the Rule 11 Agreement had been set aside, so that its terms no longer applied. To the contrary, Fountain represented to this Court that trial court had not yet been asked to enter the final order referenced in paragraph 13 of the Rule 11 Agreement and that this matter "is awaiting a judge/attorney conference." Fountain further represented, "This case should not be reinstated on the court's active docket as the agreement has not been entered, perfected, or set aside." Therefore, in my view, this Court's decision to lift the abatement was without legal justification.

In my view, this Court has failed to honor the requests of the parties that we abate the proceedings pending settlement of their dispute; we have not honored the terms of the parties' Rule 11 and Rule 6.6 Agreements by treating the motion for

17

rehearing as withdrawn and releasing the bond; and we have issued an advisory opinion regarding the trial court's options. I would have continued to follow Rule 42.1(a)(2)(C), and I would have kept the abatement in place to permit proceedings in the trial court to effectuate the parties' Rule 11 Agreement. I would not have lifted the order of abatement, and I would not now issue an order advising the trial court of its options. The motion for rehearing having been dismissed, in accordance with the parties' Rule 6.6 Agreement entered after the abatement was lifted and the habeas proceeding reinstated on our docket, I would amend the order dismissing the motion for rehearing to accord with the parties' Rule 6.6 Agreement, as requested by Fountain. I note that this Court's October 15, 2013 order dismissing the motion for rehearing contains no order remanding Fountain to custody, and I would not issue such an order.

## Conclusion

I would treat Fountain's motion for rehearing as withdrawn, and I would release the bond.



Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

ACCEPTED
221EFJ017831196
FIRST COURT OF APPEALS
HOUSTON, TEXAS
13 November 21 P4:14
Christopher A. Prine
CLERK

NO. 01-12-00704-CV

| | | |
|---|---|---|
| **IN RE TAMMY FOUNTAIN,** | § | **IN THE FIRST** |
| *Relator* | § | |
| | § | **COURT OF APPEALS** |
| | § | |
| | § | |
| | § | **AT HOUSTON, TEXAS** |

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/21/2013 4:14:05 PM
CHRISTOPHER A. PRINE
Clerk

---

### *RELATOR'S MOTION FOR EN BANC RECONSIDERATION*

---

Relator, Tammy Fountain, asks the Court to grant this motion to reconsider the case en banc.

### A.    INTRODUCTION

1.    Relator is Tammy Fountain; Real Party in Interest is Kathy Katcher; Respondent is Hon. Sheri Dean, 309th District Court of Harris County, Texas.

2.    A panel of this Court issued an Order on October 15, 2013 in this case that purported to effect a Rule 6.6 agreement of the parties. A copy of the October 15, 2013 order is attached as Exhibit A.

3.    On October 17, 2013, Relator asked this Court to modify, correct, or reform its October 15, 2013 order because it did not fully effect the Rule 6.6 agreement of the parties. Specifically, the order did not release the bond ordered by this Court on August 3, 2012.

4.    On November 7, 2013, in response to Relator's request to correct this Court's October 15, 2013 order, Justice Massengale acting for the court issued an

1

order denying the request to correct the October 15, 2013 order and stating that the trial court had discretion to release the bond issued by this Court. A copy of the November 7, 2013 order is attached as Exhibit B. Justice Keyes issued a "Memorandum Dissent from Order Dated November 7, 2013" on the same date. A copy of Justice Keyes's memorandum dissent is attached as Exhibit C.

## B. ARGUMENT & AUTHORITIES

5. The Court has authority to grant this motion and submit the case to the full court, sitting en banc. Tex. R. App. P. 41.2, 49.7.

6. The primary issue is whether this Court should issue an order that fully effects that parties' Rule 6.6 agreement by releasing the bond. The divided panel resolved the issue by holding that the parties should ask the trial court to vacate its July 31, 2012 order and ask the trial court to order the Harris County Sheriff to release the bond that this Court ordered to be executed and filed with the sheriff. The dissent notes that such an order advising the trial court of its options amounts to an advisory opinion. As set out below, this Court's decision also has constitutional implications.

7. To resolve the new issues raised by the November 7, 2013 order, Tammy Fountain asks the Court to reconsider the case en banc. *See* Tex. R. App. P. 41.2(c), 49.7.

8. The issue in this case presents the following extraordinary

2

circumstances such that resolution of the issue by the Court en banc is necessary:

**A. The November 7, 2013 order upsets the balance of power between courts of appeals and trial courts in habeas corpus proceedings**

On August 3, 2012, this Court ordered the Sheriff of Harris County to discharge Relator from custody upon execution and filing of a $500 cash bond. This action is authorized by Rule 52.8(b)(3), which provides in relevant part:

> If **the court** is of the tentative opinion that relator is entitled to the relief sought or that a serious question concerning he relief requires further consideration … in a habeas corpus proceeding, **the court** may order that relator be discharged on execution and filing of a bond **in an amount set by the court**.

Tex R. App. P. 52.8(b)(3) (emphasis added).

Rule 52.8, titled "Action on Petition," is specific to courts of appeals. A bond under this rule is part of the extraordinary relief available to relators in original proceedings. Tex. R. App. P. 52.1. Bonds set by the courts of appeals under Rule 52 should be distinguished from bonds set by a trial court for receiverships or for appeals. The purpose of Rule 52.8(b) is to relieve a relator of the trial court's actions. The trial court is the respondent in original proceedings. Tex. R. App. P. 52.2. This Court now grants respondents in habeas corpus proceedings the authority to override or supersede courts of appeals. This rule will have disastrous consequences for relators seeking habeas corpus relief from the actions of a respondent.

**B. The failure to release the bond amounts to a denial of due process or a tax or fee on habeas relief**

This case has constitutional implications. This Court's failure to release the bond amounts to a denial of due process under both the United States Constitution and the Texas Constitution. U.S. Const. amend. V, XIV; Tex. Const. art. I, § 19. In effect, the denial to release the bond amounts to a revocation of the bond without justification therefore. There is no authority for this Court to revoke the bond when it dismisses a habeas corpus pursuant to an agreement of the parties. Alternatively, it is a violation of the open courts provisions in the Texas Constitution because it constitutes an impermissible and excessive fee or tax on habeas relief. Tex. Const. art. I, § 13.

**C. Courts of appeals must issue final, non-advisory opinions**

Courts of appeals must issue final orders. Tex. R. App. P. 47.1. Contrary to this rule, the November 7, 2013 order leaves open the issue of the bond and the freedom of the relator. Moreover, courts of appeals have no authority to issue advisory opinions. *Armstrong v. State*, 805 S.W.2d 791, 794 (Tex. Crim. App. 1991) (en banc). This Court's November 7, 2013 opinion improperly advises the trial court of its options regarding the bond.

**D. Courts of appeals had a ministerial duty to fully effect the parties' agreements and/or abate to permit the trial court to effect the agreements**

The November 7, 2013 order violates Rule 6.6 of the Texas Rules of

Appellate Procedure and Rule 11 of the Texas Rules of Civil Procedure. This Court properly abated the case to permit the trial court to effect the agreement, pursuant to Tex. R. App. P. 42.1(a)(2)(C), but it improperly reinstated the case before the trial court had done so. Once the parties agreed to dismiss the rehearing challenging the denial of the habeas corpus request, this Court was required to effect the entire agreement, including the agreement that the bond be released. Tex. R. App. P. 6.6. It is not up to selectively effect the parties' agreements. It must either grant or deny the request to effect such agreements.

## C. CONCLUSION

9. Tammy Fountain, Relator, requests that this court reconsider this case en banc because the failure of the panel to release the bond (a) upsets the balance of power between courts of appeals and trial courts in habeas corpus proceedings; (b) results in an unconstitutional taking; (c) amounts to an advisory, non-final opinion; and (d) violates Texas Rules of Appellate Procedure 6.6 and/or 42.1(a)(2)(C) and Texas Rule of Civil Procedure 11.

## D. PRAYER

10. For these reasons, Tammy Fountain asks the Court to grant this motion to reconsider en banc.

5

Respectfully submitted,

*Law Office of Daniel J. Lemkuil*

*/s/ Daniel J. Lemkuil*
Daniel J. Lemkuil
State Bar No. 00789448
1314 Texas Avenue, Suite 1515
Houston, Texas 77002
Telephone: (713) 993-9100
Facsimile:(713) 225-0099
daniel_lemkuil@flash.net
ATTORNEY FOR RELATOR

## Certificate of Compliance

I certify that this document was produced on a computer using Microsoft Word 2011 and contains 1117 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Daniel J. Lemkuil*
Daniel J. Lemkuil, Attorney for Relator

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on November 21, 2013.

*/s/ Daniel J. Lemkuil*
Daniel J. Lemkuil, Attorney for Relator



ORDER

Appellate case name:     In re Tammy Fountain, Relator

Appellate case number:   01-12-00704-CV

Original Proceeding on Petition for Writ of Habeas Corpus

  Real Party in Interest Kathy Katcher has filed a "Motion to Enforce Parties' Rule 6.6 Agreement." The motion is GRANTED, and accordingly the motion for rehearing filed by relator Tammy Fountain is DISMISSED pursuant to the parties' Rule 6.6 agreement.


  It is so ORDERED.


Judge's signature: /s/ Michael Massengale_____

   ☐ Acting individually  ☒ Acting for the Court

Panel consists of Justices Keyes, Massengale, and Brown.

Date:  October 15, 2013_____



——————————

**In re Tammy Fountain, Relator**

**No. 01-12-00704-CV**

**Original Proceeding on Petition for Writ of Habeas Corpus**

——————————

## ORDER

In a letter to the clerk of the court, counsel for relator asked that we "correct, modify, or reform" our October 15, 2013 order to address a provision of the parties' Rule 6.6 agreement which stated that they "ask that the Court . . . take no further action in this habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond."

This court ordered relator discharged on execution and filing of a bond in the amount of $500. *See* Tex. R. App. P. 52.8(b)(3). Subsequently we denied the petition for writ of habeas corpus, and the real party in interest agreed not to seek enforcement of the trial court's contempt order of May 24, 2012 or the revocation order of July 31, 2012. In light of the parties' agreement, the trial court may, in its discretion, vacate its July 31, 2012 order, and it may order that the bond be released.

IT IS SO ORDERED.

Judge's signature:     /s/ Michael Massengale_____
                       ☐ Acting individually     ☒ Acting for the Court

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Date: November 7, 2013

**Dissent issued November 7, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00704-CV

———————————

## IN RE TAMMY FOUNTAIN, Relator

———

**Original Proceeding on Petition for Writ of Habeas Corpus**

———

**MEMORANDUM DISSENT FROM ORDER DATED NOVEMBER 7, 2013**

This is an original habeas corpus proceeding arising out of an underlying proceeding to enforce a child custody agreement pending in the trial court.

Relator, Tammy Fountain, challenged the trial court's order of July 31, 2012, revoking its earlier suspension of her sentence for contempt for violating the

court's temporary orders and committing her to jail.[1] On December 28, 2012, this Court issued an opinion affirming the trial court's revocation order over my dissent. Unknown to this Court, the parties had filed a Rule 11 Agreement in the trial court on December 12, 2012. One of the provisions of the Rule 11 Agreement was the agreement of real party in interest, Kathy Katcher, to drop the enforcement proceeding once the trial court approved the settlement agreement. The trial court's approval was contingent on the parties' performing under the agreement for six months.

On January 2, 2013, Fountain filed a motion for rehearing, in which she requested withdrawal of this Court's December 28, 2012 opinion. At Katcher's request, this Court abated proceedings on Fountain's motion so that the parties could finalize their settlement agreement with regard to the enforcement proceeding as set out in their Rule 11 Agreement. The trial court has repeatedly moved back the date for a status conference, scheduled in the Rule 11 Agreement for June 2013 and referenced in the Rule 11 Agreement as a condition precedent to finalization of the Agreement. Therefore, the Agreement has not been finalized. Nor has it been withdrawn.

---

[1] The underlying case is *Kathy Katcher v. Tammy Fountain*, No. 2010-31997, in the 309th District Court of Harris County, Texas, the Honorable Sheri Y. Dean, presiding.

2

Despite the still-pending settlement agreement, on September 24, 2013, this Court, sua sponte, lifted its abatement of the habeas corpus proceeding and advised the parties that it intended to deny Fountain's motion for rehearing.

The parties responded by filing an agreement pursuant to Texas Rule of Appellate Procedure 6.6, asking this Court to "treat Fountain's motion for rehearing as withdrawn and take no further action in this habeas proceeding," not to enter an order remanding Fountain to custody, and to release a bond that this Court had required pending resolution of the habeas corpus proceedings.

This Court issued an order on October 15, 2013, that dismissed the motion for rehearing but that did not address the parties' other requests.

On October 17, 2013, Fountain filed a "request to modify, correct or reform this Court's October 15, 2013 order dismissing the motion for rehearing filed by relator, Tammy Fountain pursuant to the parties' Rule 6.6 Agreement."

The panel majority now issues an advisory opinion in the form of an Order advising the trial court that, "[i]n light of the parties' agreement, the trial court may, in its discretion, vacate its July 31, 2012 order, and it may order that the bond be released." The order itself does not release the bond.

Because I believe that the panel majority lacks the power to advise the trial court regarding the exercise of the trial court's powers and that the majority has failed to honor the terms of the parties' Rule 11 and Rule 6.6 Agreements, has

3

overstepped its own jurisdiction in issuing an advisory opinion to the trial court, and has failed to dispose of all issues before it that are necessary to the final resolution of this dispute—namely, by failing to order release of the bond that this Court had previously required—I dissent.

I would have honored the terms of the parties' Rule 11 and Rule 6.6 Agreements and the provisions of Texas Rule of Appellate Procedure 42.1(a)(2)(C), governing voluntary dismissal of civil cases by agreement of the parties, pursuant to which we abated the habeas proceedings in this Court. I would not have lifted our order of abatement, and I would not now issue an order advising the trial court of its options. Because the abatement was nevertheless lifted and the motion for rehearing of this Court's December 28, 2012 opinion was dismissed pursuant to the parties' Rule 6.6 Agreement, I would treat the motion for rehearing as withdrawn and I would release the bond. I note that this Court's October 15, 2013 order dismissing the motion for rehearing contains no order remanding Fountain to custody.

## Background

Fountain filed this original habeas corpus proceeding to challenge the trial court's July 31, 2012 order revoking its earlier suspension of a contempt sentence it had imposed on her in the underlying enforcement proceeding for violation of temporary orders entered in a child custody dispute.

4

On August 3, 2012, in response to Fountain's request, this Court issued a memorandum order ordering the Sheriff of Harris County to discharge Fountain from custody upon execution and filing of a $500 bond with the Sheriff.

On December 28, 2012, the majority issued an opinion upholding the trial court's revocation of its order suspending commitment. I dissented. I agreed with Fountain that the commitment order was void and that her commitment to jail violated her constitutional right to due process of law. I would have granted the habeas corpus petition, and I would have ordered Fountain discharged.

On January 2, 2013, five days after issuance of this Court's opinions in the underlying habeas proceeding, Fountain filed a motion for rehearing that, inter alia, informed the Court that "the parties agreed by Rule 11 to the requested relief prior to the issuance of this Court's opinion." Fountain stated that, specifically, the parties agreed to dismiss the underlying enforcement proceeding and Katcher agreed to notify this Court that she does not oppose the habeas proceeding. The motion also stated, "The temporary orders that are the subject of the December 12, 2012 Rule 11 Agreement are set for entry on January 3, 2013 in the trial court." Fountain asked that this Court "grant this motion for rehearing, withdraw its opinion, and issue a writ of habeas corpus as unopposed on the basis of the expressed dissent."

5

On January 15, 2013, Katcher responded to Fountain's motion for rehearing. A copy of the signed agreement, file stamped December 12, 2012, by the district clerk, was attached. Katcher stated, "On December 12, 2012, trial counsel for the parties met and negotiated a preliminary settlement agreement of their underlying enforcement dispute." She further stated, "The intent of the parties as reflected in the agreement was that they would perform under the agreement for a 6-month period—until June 2013—at which time they would attend a status conference in the trial court to obtain a final order." Katcher stated that she agreed to drop the enforcement proceeding, but that the "expressed intent" of the agreement in paragraph 14 "was that the enforcement agreement would not be dismissed until June 2013, and that her duty to inform this Court of the preliminary agreement did not arise until after June 2013—after a status conference and after the agreement became final."

Katcher requested that this Court abate the habeas proceeding until July 1, 2013. She explained,

> The abatement will permit the parties to perform under the agreement, and will allow the trial court to conduct a status conference in June 2013 and enter a final order if the parties have performed under the agreement. Then, if the agreement is performed, [Katcher] will dismiss the underlying enforcement proceeding and—per paragraph 14 of the agreement—notify the Court that the habeas proceeding has been rendered moot.

In a "Supplement to Motion for Rehearing," filed January 4, 2013, Fountain conceded that "a reading of the Rule 11 Agreement may also support the position that such a duty to inform this Court of the agreement will not arise until after June 2013."

This Court issued an order abating proceedings on Fountain's motion for rehearing until July 1, 2013. The order required that the parties "timely notify this court of all events affecting the status of this case, including when the trial court has entered a final order" and that they "file either a status report or a motion to dismiss by **July 1, 2013**."

On July 1, 2013, Katcher filed a status report informing this Court that the trial court had set the status conference required by the Rule 11 Agreement, which had been requested for June, for July 2, 2013, and, therefore, there was no final order of the trial court in the underlying enforcement proceeding.

The next day, July 2, the authoring judge of the December 28, 2012 opinion, acting individually, issued an order requiring the parties to "file an updated status report or a motion to dismiss **within 3 days** of any further status conference held in the trial court." The order also required the parties to satisfy a number of other conditions. It required the parties to "inform this court no later than **August 9, 2013**" whether the trial court had been requested to enter a final order and "if not, why not." It required that this Court be told whether Katcher had dismissed her

7

enforcement petition with prejudice; "[w]hether this original proceeding has become moot for any reason"; and "[w]hether there is any reason why this original proceeding should not be reinstated on the court's active docket." The order also stated, "To the extent this original proceeding is not moot, Katcher is requested to provide the court of appeals with any revised or supplemental response to the motion for rehearing no later than **August 9, 2013.**"

On August 9, 2013, Katcher filed a status report in response to the July 2, 2013 order. She reported that a status conference had been held on July 2, 2013, and that the trial judge ordered temporary custody of the minor child to Katcher and ordered a psychological evaluation of Fountain. The report stated that no further action would be taken in the trial court until there was "at least a preliminary report" from the physician performing the psychological evaluation. The status report further stated that the preliminary report was to have been performed by August 14, but that the physician had stated he could not meet that deadline, so the status conference in the trial court, which had been recessed until August 14, 2013, was likely to be recessed again.

On August 21, 2013, Fountain likewise filed a status report. She reported that the parties were "to confer with the trial court regarding disposition of the underlying enforcement action," but that "[t]his event has not been formally set." She stated, "This case should not be reinstated on the court's active docket as the

agreement has not been entered, perfected, or set aside. The parties are awaiting the pleasure of the [trial] Court, who is addressing the best interests of the child's issues at this point."

On September 24, 2013, this Court lifted the abatement and directed that the parties file any further submissions relating to Fountain's motion for rehearing by October 1, 2013.

On September 27, 2013, in response to this Court's September 24, 2013 order, the parties submitted an agreement pursuant to Rule 6.6 together with a "Motion to Enforce Parties' Rule 6.6 Agreement." *See* TEX. R. APP. P. 6.6 (providing that parties or their counsel may file enforceable agreement in appellate court if agreement is in writing and signed by parties or their counsel). The Rule 6.6 Agreement provided:

- Fountain agrees to withdraw and hereby withdraws her motion for rehearing; and

- Katcher agrees not to seek enforcement of the trial court's contempt order of May 24, 2012, or the revocation order of July 31, 2012.

The parties further agreed, that, as a consequence of their having filed the Rule 6.6 Agreement in the trial court, the agreement also "constitutes an enforceable agreement under TEX. R. CIV. P. 11." The parties asked that this "Court treat Fountain's motion for rehearing as withdrawn and take no further action in this

habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond."

On October 15, 2013, this Court issued an order that granted Katcher's "Motion to Enforce Parties' Rule 6.6 Agreement" and dismissed Fountain's motion for rehearing "pursuant to the parties' Rule 6.6 agreement." The Court did not remand Fountain to custody and it did not release the bond.

On October 17, 2013, Fountain filed a "request to modify, correct or reform this Court's October 15, 2013 order dismissing the motion for rehearing filed by relator, Tammy Fountain pursuant to the parties' Rule 6.6 Agreement." Fountain reminded the Court that the motion to enforce the Rule 6.6 Agreement "included the following [prayer]: 'Therefore the parties ask that the Court treat Fountain's motion for rehearing as withdrawn and take no further action in this habeas proceeding, but specifically including that this Court not enter an order remanding Relator to custody, but release the bond.'" Fountain pointed out, "This Court's October 15, 2013 order does not address the agreement that the Relator not be remanded to custody and that the bond be released." Fountain requested that this Court "correct, modify, or reform its October 15, 2013 Order to address these issues."

In response to Fountain's motion to correct, modify, or reform the October 15, 2013 order, the majority issues an advisory opinion in the form of an order. It

10

advises the trial court, "In light of the parties' agreement, the trial court may, in its discretion, vacate its July 31, 2012 order, and it may order that the bond be released." The majority incorrectly informs the trial court that it has the discretion to release a bond that had been ordered by this Court and fails to honor the parties' Rule 6.6 Agreement and their Rule 11 Agreement.

I believe this Court—which granted abatement pursuant to the parties' request that we abate the proceedings until their Rule 11 Agreement dismissing the underlying enforcement action could be finalized in the trial court—erred in reinstating the habeas proceeding sua sponte. I believe the Court's actions have interfered with the parties' finalization of their settlement agreement—then, as now, pending in the trial court—and have violated Rule 42.1, governing voluntary dismissal of appeals in civil cases and providing for abatement to permit the trial court to effectuate a settlement agreement. I believe we have further erred in only partially granting the parties' Rule 6.6 Agreement, leaving the rest pending, and that we have compounded the error by issuing an advisory order to the trial court advising it as to the actions it may take while the parties' Rule 11 Agreement remains pending in that court and by refusing to release the bond that had been imposed by this Court—not by the trial court.

For the foregoing reasons, I dissent. I would not have lifted our abatement of the habeas corpus proceedings while the parties were still attempting to finalize

their Rule 11 Agreement in the trial court. And once the parties asked that we honor their Rule 6.6 Agreement, treat the motion for rehearing as withdrawn, and release the bond, I would have done so.

**Analysis**

Rule 42.1(a) allows an appellate court to dispose of a proceeding by voluntary dismissal in civil cases as follows:

> (1) On Motion of Appellant. In accordance with a motion of appellant, the court may dismiss the appeal or affirm the appealed judgment or order unless disposition would prevent a party from seeking relief to which it would otherwise be entitled.
>
> (2) By Agreement. In accordance with an agreement signed by the parties or their attorneys and filed with the clerk, the court may:
>
> (A) render judgment effectuating the parties' agreements;
>
> (B) set aside the trial court's judgment without regard to the merits and remand the case to the trial court for rendition of judgment in accordance with the agreements; or
>
> (C) abate the appeal and permit proceedings in the trial court to effectuate the agreement.

TEX. R. APP. P. 42.1(a).

> (c) *Effect on Court's Opinion*. In dismissing a proceeding, the appellate court will determine whether to withdraw any opinion it has already issued. An agreement or motion of dismissal cannot be conditioned on withdrawal of the opinion.

TEX. R. APP. P. 42.1(c).

12

Texas Rule of Civil Procedure 11 provides, in relevant part, that, unless otherwise provided for in the rules, "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record." TEX. R. CIV. P. 11. Rule 11 agreements are effectively contracts relating to litigation. *Golden Spread Elec. Coop., Inc. v. Denver City Energy Assocs., Inc.*, 269 S.W.3d 183, 190 (Tex. App.—Amarillo 2008, pet. denied). Thus, they are interpreted in the same manner as contracts. *Id.* When a settlement agreement satisfies the requirements of Rule 11—i.e., when it is written, signed, and filed in the records of the court, or is made in open court, and it has sufficiently definite terms to allow a court to determine the obligations of the parties—it is enforceable. *See Berg v. Wilson*, 353 S.W.3d 166, 172 n.9 (Tex. App.—Texarkana 2011, pet. denied). A settlement agreement must comply with Rule 11 to be enforceable. *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 690 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

A trial court has a duty to enforce the terms of a Rule 11 agreement. *Fortis Benefits v. Cantu,* 234 S.W.3d 642, 651 (Tex. 2007); *see In re F.C. Holdings, Inc.,* 349 S.W.3d 811, 815 (Tex. App.—Tyler 2011, orig. proceeding); *Scott-Richter v. Taffarello,* 186 S.W.3d 182, 189 (Tex. App.—Fort Worth 2006, pet. denied) ("A trial court has a ministerial duty to enforce a valid Rule 11 agreement.").

13

A Rule 11 settlement agreement "touching upon" a suit in the Texas courts may be made at any time before execution of judgment. *See Coale v. Scott*, 331 S.W.3d 829, 831 (Tex. App.—Amarillo 2011, no pet). The trial court may enforce a Rule 11 agreement even if it was made even after the cause was tried and finally resolved via judgment if the agreement is in writing, signed and filed with the papers as part of the record, or made in open court and entered of record, as a trial court has continuing power to enforce its judgments after they become final. *See id*. at 831–32. This is the case because the agreement becomes a contract when it is executed, not when the trial court attempts to enforce it. *Id*. at 832. "[T]he trial court's order is simply a judgment enforcing a binding contract." *Id*.

Public policy favors settlement agreements. *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992); *Caballero v. Heart of Texas Pizza, L.L.C.*, 70 S.W.3d 180, 181 (Tex. App.—San Antonio 2001, no pet.) (per curiam). Hence, Rule 42.1(a) is designed to facilitate the appellate courts' power to dispose of cases that settle on appeal in accordance with the intent of the parties. *See Caballero*, 70 S.W.3d at 181.

Here, the proceeding the parties had sought in their Rule 11 Agreement to be dismissed was an original appellate proceeding seeking review of an incidental order in a pending underlying suit seeking enforcement of temporary child-custody orders. This Court had jurisdiction over the original proceeding, but the trial court

14

had, and still has, jurisdiction over the underlying enforcement proceeding, which the parties represent that they have settled, conditioned only upon (1) the performance of the terms of the agreement during the period between execution of the Rule 11 agreement on December 12, 2012, and June 2013, and (2) a status conference to have been held in the trial court in June 2013 to determine whether the parties had satisfactorily performed terms of the Rule 11 Agreement during the period prior to that time. This Court, therefore, properly abated the habeas proceeding upon request of the parties to permit the trial court to conduct proceedings to effectuate the terms of the settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(C).

There is no question that the settlement agreement was entered into to resolve an ongoing custody dispute in the trial court in which no final order had been issued. Thus, there is no question that the parties had the right to settle their dispute and that both the trial court—and this Court—had then and have now a ministerial duty to enforce the intent of the parties to that agreement. *See Fortis Benefits*, 234 S.W.3d at 651. A Rule 11 settlement agreement "touching upon" a suit in the Texas courts may be made at any time before execution of judgment. *See Coale*, 331 S.W.3d at 831. Here, in December 2012, while the habeas proceeding was pending in this Court, the parties settled the enforcement proceeding subject to the parties' performance under the terms of the agreement

15

until June 2013, and the parties so advised this Court.  This Court was then plainly required by Rule 42.1 to abate the habeas proceeding in this Court upon request of the parties to permit proceedings in the trial court to effectuate the terms of their settlement agreement.  *See* TEX. R. APP. P. 42.1(a)(2)(C).  And it initially did so.

One of the provisions in the parties' Rule 11 Agreement was the agreement to dismiss the habeas proceeding then pending in this Court.  However, the parties also agreed to comply with specified provisions of the agreement as a condition precedent to the issuance of a final order by the trial court.  The agreement, therefore, provided that the trial court would hold a status conference in June 2013 to determine whether the parties had performed under the Rule 11 Agreement, and, if they had, the agreement contemplated that the trial court would issue a final order.  The parties agreed that when the final order issued, they would move to dismiss the habeas corpus proceeding in this Court as moot.  The entry of a final order by the trial court upon performance of the terms of the Rule 11 Agreement prior to July 1 and the dismissal of the habeas corpus proceeding upon issuance of the trial court's final order were both made specific provisions of the Rule 11 Agreement.  Dismissal of the habeas proceeding was clearly a material part of the consideration for that agreement.

Under Rule 11, the trial court had, and it still has, a duty to enforce the parties' settlement agreement, and it has a ministerial duty to sign a final order

16

respecting the parties' intentions as expressed in the agreement. *See Fortis Benefits*, 234 S.W.3d at 651. The trial court's final order is simply a judgment enforcing a binding contract. *See Coale*, 331 S.W.3d at 832. Likewise, this Court had a duty under Rule 42.1(a)(2)(C) to abate the habeas proceeding to permit the trial court to effectuate the settlement agreement. *See* TEX. R. APP. P. 42.1(a)(2)(C); *Caballero*, 70 S.W.3d at 181.

No party complained to this Court that the trial court had failed to enforce the Rule 11 Agreement according to its terms or to perform its ministerial duty of executing a final order in accordance with those terms; and no party represented to this Court that the Rule 11 Agreement had been set aside, so that its terms no longer applied. To the contrary, Fountain represented to this Court that trial court had not yet been asked to enter the final order referenced in paragraph 13 of the Rule 11 Agreement and that this matter "is awaiting a judge/attorney conference." Fountain further represented, "This case should not be reinstated on the court's active docket as the agreement has not been entered, perfected, or set aside." Therefore, in my view, this Court's decision to lift the abatement was without legal justification.

In my view, this Court has failed to honor the requests of the parties that we abate the proceedings pending settlement of their dispute; we have not honored the terms of the parties' Rule 11 and Rule 6.6 Agreements by treating the motion for

17

rehearing as withdrawn and releasing the bond; and we have issued an advisory opinion regarding the trial court's options. I would have continued to follow Rule 42.1(a)(2)(C), and I would have kept the abatement in place to permit proceedings in the trial court to effectuate the parties' Rule 11 Agreement. I would not have lifted the order of abatement, and I would not now issue an order advising the trial court of its options. The motion for rehearing having been dismissed, in accordance with the parties' Rule 6.6 Agreement entered after the abatement was lifted and the habeas proceeding reinstated on our docket, I would amend the order dismissing the motion for rehearing to accord with the parties' Rule 6.6 Agreement, as requested by Fountain. I note that this Court's October 15, 2013 order dismissing the motion for rehearing contains no order remanding Fountain to custody, and I would not issue such an order.

**Conclusion**

I would treat Fountain's motion for rehearing as withdrawn, and I would release the bond.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.